## NOTT *v.* FITZGIBBON.

### *(Jackson.*    May    5,    1901.)

1. WILL.    *Copy of will construed.*

"I hereby will my home place of seventy (70) acres, and seventy acres on the west and adjoining, and seventy acres still west, to my wife, Hanna Fitzgibbon, and my son, James Fitzgibbon, jointly for life.  In case my son, James Fitzgibbon, dies without issue, or my wife should die, I hereby will and bequeath the homestead and the next seventy acres to Mrs. Margaret Nott and her four daughters, for life, and will remainder to their heirs.  I hereby will and bequeath seventy acres, more or less, lying west of the home place and the seventy acres before mentioned, to Thomas Clifton and his children, for their lives, with remainder to their heirs, after the death of my wife and son, James Fitzgibbon." *(Post, pp. 55, 56.)*

2. SAME.    *Construction of same.*

The Court holds upon a proper construction of said will: (1) That testator's widow and son, James, take an estate for their joint lives, and during the life of the survivor of them, in the three tracts of land; (2) that testator's son, James, having survived the widow and having heirs born to him, takes the homestead tract and the seventy acres adjoining it on the west, in contingent fee, determinable upon his dying "without issue;" he takes only the life estate in the other seventy acres in any event; (3) that Margaret Nott and her daughters take, under the devise to them, only in the event that the son, James, dies without issue; (4) that Thomas Clifton and his children take the remainder in the seventy acres devised to them absolutely, and free from the condition contained in the devise to Margaret Nott and her daughters.  *(Post, pp. 55–65.)*

Cases cited: Petty *v.* Morse, 5 Sneed, 126; Owen *v.* Hancock, 1 Head, 562; Cowan, McClung & Co. *v.* Wells, 5 Lea, 682; Battle *v.* House, 4 Lea, 202; Alston *v.* Davis, 2 Head, 265.

3. SAME.    *Construction of separate provisions.*

There must be connection by grammatical construction, direct words of reference, or by the expression of some common pur-

Nott v. Fitzgibbon.

pose, between distinct bequests or devises in a will, to justify the drawing in aid the special terms of one bequest to construe another. Independent provisions, not so connected, must be separately construed, even though there may be room for conjecture that the testator had the same intention as to all. (*Post, p. 63.*)

Cases cited: Simpson v. Smith, 1 Sneed, 394; Randolph v. Wendel, 4 Sneed, 647; Wood v. Polk, 12 Heis., 220; Kay v. Connor, 8 Hum., 624.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

EDGINGTON & EDGINGTON for Nott.

BOYLE & BOYLE, WILLIAM TAYLOR, and RANDOLPH & RANDOLPH for Fitzgibbon.

BEARD, J. The bill in this cause was filed for a construction of the second paragraph of the will of the late Edward Fitzgibbon, which is in the words following, to wit:

"2. I hereby will my home place of seventy (70) acres, and seventy acres on the west and adjoining, and seventy acres still west, to my wife, Honora Fitzgibbon, and my son, James Fitzgibbon, jointly for life.

"In case my son, James Fitzgibbon, died without issue, or my wife should die, I hereby will and bequeath the homestead and the next seventy acres

to Mrs. Margaret Nott and her four daughters for life, and with remainder to their heirs.

"I hereby will and bequeath the seventy (70) acres, more or less, lying west of the home place, and the seventy acres before mentioned, to Thomas Clifton and his children for their lives, with remainder to their heirs, after the death of my wife and son, James Fitzgibbon."

The property which was thus devised was a tract of land lying near the city of Memphis, which consisted, in the aggregate, of two hundred and ten acres, but which, by a survey made at the instance of the testator, had been subdivided into three tracts, in the form of parallelograms, of seventy acres each. The tract on the east was called by him indiscriminately the "homestead" or "home place," as on it was located his residence and appurtenances. On the west of that lay one of the tracts in question, and still farther west, but adjoining, however, the last, was the other seventy-acre lot.

The Chancellor, having found as a fact that Honora Fitzgibbon was dead, construed the paragraph set out as follows:

"(1) That it was the intention of the testator, Edward Fitzgibbon, to give his son, James Fitzgibbon, in case he survived his mother, Honora Fitzgibbon, a life estate in the 210 acres composed of the three seventy-acre tracts.

"(2) That the testator intended that if James

Fitzgibbon died leaving issue surviving him, such issue should take the fee in said 210 acres.

" (3) That the testator also intended that ·in case the said James Fitzgibbon should die without issue surviving him, that Mrs. Margaret Nott and her four daughters should take a · life estate in the seventy acres known as the homestead, and the next seventy acres west of said homestead, with remainder to their heirs in fee.

" (4) That the testator intended that Thomas W. Clifton and his children should take a life estate in the seventy acres west of the ·two ·seventy-acre tracts mentioned in three (being the westernmost seventy acres of the 210-acre tract), with remainder to their heirs in fee, provided ųthat James Fitzgibbon should die without issue surviving him."

In part we agree and in part disagree with this construction. We agree with the Chancellor in holding that the testator devised to his wife, Honora, and to his son, an estate for their joint lives, and during the life of the survivor, the three tracts above described, but we do not concur with him in his conclusion " that the testator intended that if James Fitzgibbon died leaving issue surviving him, such issue would take the fee in said two hundred and ten acres."

This conclusion can be based alone on the ground that an estate by implication is created in the issue of James; for it is apparent that

there are no express words in the will creating an estate in any portion of the tract in such issue. In the case of *Machell* v. *Weiding*, 8 Sim., 4, "the testator gave real and personal estate to his wife for life, and after her death to her son James for life, but if his son should die without issue, not having any children, then his estate to be sold and the money to be divided among his other children."

In construing this clause, with the view of determining the character of the estate which the son of the testator took, Sir L. Shadwill, V. C., observed "that it was perfectly manifest that the testator did not intend the estate to go over so long as any issue of the first taker were in existence; and I consider it," he said, "to be a settled point that, whether an estate be given in fee or for life, or generally, without any particular limit as to duration, if it be followed by a devise over in case of the devisee dying without issue, the devisee will take an estate tail." In discussing this and other cases, Mr. Jarman, in his very learned and exhaustive work on Wills, in his second volume, star page 139 (page 556), says : "It is to be observed that where the person on whose general failure of issue a devise is expressly made expectant, is the heir at law of the testator, he becomes by the application of the rule under consideration tenant in tail by implication in precisely the same manner as if there

had been a prior devise to him and his heirs in the will."

In the case just referred to and in the rule thus announced by the author, if they are controlling, we have the key to the construction of the clause now being considered. For in this we have the testator devising to "his heirs at law" for the term of his life (he having survived his mother, who is now dead), with a limitation over if "he die without issue"—which under section 3675 of the Shannon's Code, means issue "living at the time of his death or born to him within ten months thereafter." As no intention otherwise is "expressly and plainly declared in the will creating it," this estate tail, under section 3673 of the (Shannon's) Code, would be converted into an estate in fee in the son, James, and his issue would take, not under the will, but as his heirs.

This estate in fee, however, would be determinable or conditional upon his dying without issue, in which event, and only in such event, will the limitation over, in favor of Mrs. Nott and her four daughters for life, with remainder to their heirs take effect.

But we have a line of cases in this State settling this question without resorting to the rule laid down by Mr. Jarman, and yet which bring about the same result. In *Petty* v. *Moore,* 5 Sneed, 126, the testator devised and bequeathed his

real and personal estate to his wife for life with remainder over to his eleven children.

By a codicil to his will, among other provisions, was the following: "I do will and declare, if any of my eleven children shall die without an heir of their body, that all of the property that shall ever descend to them from me shall return and be equally divided among the remainder of my heirs that shall be living." One of these children died after the decease of the testator, but before the life estate ended, leaving children, and the question was, Did his share of the testator's estate vest in his children, under the clause of the codicil, or "did it pass in the ordinary course of descent to his representatives, real and personal."

The insistence for the children was that they took under the codicil "by implication of law," but it was held otherwise. This Court said: "It is clear that by the previous provisions in the body of the will the eleven children of the testator took, severally, a permanent interest in the remainder, and it is equally clear that by the codicil each one of the children named therein was vested with an immediate, absolute interest, subject to the possibility of its being divested in a future contingency: that is, upon the death of either without child."

This rule was afterwards, in *Owen* v. *Hancock,* 1 Head, 562, applied to the taker of a

life - estate. The provision in the will then construed was as follows: "I give to my daughter, Mary Cooper, a negro girl, Celia, during her lifetime, and if she should die without any heirs of her body, the said negro girl and her increase to return to my estate and be equally divided among the rest of my children." The Court said: "Here is a disposition of slaves to his daughter for life, and no express disposition over except in one event, that she should die without "heirs of her body," and in that event to go to his, the testator's, other children. This contingency did not happen, for she died in 1853, leaving three children. It cannot then return to his estate, and the - question is, where does it go, when the event upon which it was to go over made the will, however, impossible?

"In the - will of Amistead Moore there was a clause very similar to this, which we construed at the last term (5 Sneed, 127), as we now do this. Perhaps the only difference is, that then the estate given was general, dependent upon the contingency of dying without heirs of the body, and here it was for life in terms. Can this make any difference in the construction? We think not: and so are the authorities. So the life estate, expressly given, was enlarged into a fee, upon the birth of a child." The authority of these cases is in no way disturbed by *Turner* v. *Ivie,* 5 Heis., 222, and they are referred to approv-

ingly in the later cases of *Cowan, McClung & Co.* v. *Wells,* 5 Lea, 682, and the rule therein announced may well be regarded as one of property in this State.

So that, the record disclosing that James, the son, is married and has had issue born to him, under this rule the estate for life devised to him in the homestead of seventy acres and the tract of seventy acres immediately west thereof, has been enlarged into a fee, determinable, however, upon his dying "without issue" (*Petty* v. *Moore,* supra, and *Battle* v. *House,* 4 Lea, 202, and *Alston* v. *Davis,* 2 Head, 265), in which event the limitation over will take effect.

Nor do we agree with the Chancellor in his construction of the last clause of this paragraph, in which provision is made for Thomas Clifton and his children for life, with remainder over.

It will be observed that there is an essential difference between the clause in which the testator creates the limitation over to Mrs. Nott and her daughters and the heirs of the latter, and the one we are now called upon to construe. In the first the limitations take effect only in the event that "James Fitzgibbon die without issue, or [which is to read 'and'] my wife shall "after the death of my wife and son, James Fitzgibbon." It is only by the addition of the words "provided that James shall die without issue," that the construction of the Chancellor can

be sustained. For this we think there is no authority. The two clauses, while embraced in one paragraph, are independent of each other, as much so as if they constituted separate items located in different parts of the will. The later clause makes provision for new parties, and is altogether free from ambiguity.

It does not require a reference to the earlier clause for aid in interpretation, and to make such reference with a view to interpretation, is to run counter to what we conceive to be the plainly expressed intention of the testator. This would be to make a will for him.

In addition we think to do this would be in the face of a well established rule of construction. Mr. Pritchard, in his very excellent work on Wills, at section 391, says: "There must be connection by grammatical construction, direct words of reference or by the expression of some common purpose, between distinct bequests or devises in a will, to justify the drawing in aid the special terms of one bequest to construe another. Independent provisions, not so connected, must be separately construed, even though there may be room for conjecture that the testator had the same intention as to all." This text is supported by *Simpson* v. *Smith*, 1 Sneed, 394; *Randolph* v. *Wendel*, 4 Sneed, 647; *Wood* v. *Polk*, 12 Heis., 220; *Kay* v. *Connor*, 8 Hum., 624.

Mr. Jarman thus formulates the rule:

"That several independent devises, not gramatically connected or united by the expression of a common purpose, must be construed separately, and without relation to each other, although it may be conjectured, from similarity of relationship, or other circumstances, that the testator had the same intention in regard to both. There must be an apparent design to connect them." Rule 22, 3 Jarman on Wills, star page 343.

So we hold that under this paragraph of the clause a vested remainder for life was created in Thomas Clifton and his children, with remainder to their heirs, which will ripen into an estate in possession immediately on the death of James Fitzgibbon, whether with or without issue.

We further hold that this devise embraces alone the most western of these three seventy-acre tracts. We disagree with the construction of the counsel for Clifton and his children, that it was the purpose of the testator to devise to them the two tracts lying west of the home tract. It is not essential to its true construction to interpolate words.

The phraseology, we think, with a sufficient distinctness indicates that these parties should take the "seventy acres lying west of the home place," and also west of the seventy acres immediately adjoining it on the west. This saves all repugnancy and meets what we conceive to be the evident intention and purpose of the testator.

Nott *v.* Fitzgibbon.

A decree will be entered here embodying this construction of the second clause of the will. The cross bill of Thomas Clifton is dismissed at his cost. All other costs in the cause will be divided between the complainants and the defendants.