R. H. ANDERSON *et al. v.* JODIE LUCAS *et al.**

(*Jackson.* April Term, 1918.)

1. WILLS. Devise of fee. Use of ''heirs.''

It .was not necessary at common law to use the word "heirs" in a devise in order to carry a fee. (*Post, pp.* 346-348.)

2. WILLS. Devise in trust. Presumption as to interest of beneficiaries.

In a devise to trustees of a legal estate in fee for the benefit of an individual or a class, testator will be presumed to intend that the beneficiaries shall take an equitable interest of precisely the same extent as the legal interest expressly vested in the trustee. (*Post, pp.* 346-348.)

Case cited and distinguished: Fox v. Fox, 102 Tenn., 77.

3. WILLS. Subsequent provisions.

Subsequent provisions in a will, when in conflict with prior ones, will control. (*Post, pp.* 348, 349.)

Case cited and approved: Owen v. Hancock, 38 Tenn., 563.

4. WILLS. Construction. Estate tail.

The language "and if she should die without lawful issue," in devise to trustees for use of testator's daughter, after her death whole to be divided among her children, if any, and if she should die without lawful issue property to be equally divided among other daughters, at common law would have created estate tail. (*Post, pp.* 349, 350.)

Cases cited and approved: Randolph v. Wendel, 36 Tenn., 647; Bramlet v. Bates, 33 Tenn., 554; Nott v. Fitzgibbon, 107 Tenn. 54; Scruggs v. Maybrry, 135 Tenn., 586; Speight v. Askins, 118 Tenn., 719.

5. WILLS. Estate tail. Conversion into fee.

Under Thompson's-Shannon's Code, section 3673, testator's daughter, language of will devising to her in 1843 an estate tail at com-

---

*On necessity of word "heirs" in deed or devise in trust, to pass fee to trustee, see note in 2 L. R. A. (N. S.) 172.

Anderson v. Lucas.

mon law, took estate in fee in lands covered by act. (*Post, pp.* 350-352.)

Acts cited and construed:    Acts 1784, ch. 22, sec. 5;   Acts 1851-52, ch. 91, sec. 3.

Cases cited and distinguished:    Nott v. Fitzgibbon, 107 Tenn., 58;   Machell v. Weiding, 8 Sim., 4.

Codes cited and construed: Sec. 3673, 3675 (T.-S.).

6. **WILLS. Life estate. Executory devise. Enlargement of fee.**

Where estate is created in fee or for life, and on the estate another is conditioned to arise by way of executory devise on occurrence of given event, and such event does not occur, so that estate over cannot vest, first estate continues, and, if a life estate, is enlarged into a fee. (*Post, p.* 352-353.)

7. **WILLS. Death of devisee. Heirs.**

On death of a devisee, her children could not take any estate, under the devise, but took only by inheritance. (*Post, pp.* 352, 353.)

8. **ESTOPPEL. By deed. Effect as against heir.**

In case of conveyance by first taker of estate for life with an executory devise over, the right of inheritance of her children would be defeated; they being estopped by the deed. (*Post, pp.* 352, 353.)

Cases cited and approved:    Owen v. Hancock, 38 Tenn., 565-568; Alston v. Davis, 39 Tenn., 266;   Petty v. Moore, 37 Tenn., 126; Cowan v. Wells, 73 Tenn., 682;   Nott v. Fitzgibbon, 107 Tenn., 54;   Williamson v. Tunis, 107 Tenn., 83.

9. **WILLS. Independent devise. ''Addition.'' ''Accretion.''**

Item of will, giving to testator's sons, as trustees for daughter, seven hundred twelve and one-half acres of land, *held* an independent devise, not in substitution for any property devised in any prior item, and not being technically an "addition" or "accretion" to any former legacy or devise. (*Post, pp.* 353-357.)

10. **WILLS. Relating devise to other. Express terms.**

Express terms in a will are not needed to range a devise in trust under the terms of any other. (*Post. pp.* 353-357.)

140 Tenn.—22

11. **WILLS.** Construction. Freedom of devise from trust.

   In case of doubt, whether it was not testator's purpose to give land devised in subsequent items of will to each of three daughters free from trust fetters which he attempted to impose on their rights to other property under prior items of will, such doubt should be resolved in favor of first takers, daughters and heirs of testator. (*Post, pp.* 353-357.)

  Case cited and distinguished: Fox & Wheatly v. Fox, 102 Tenn., 77.

---

FROM DYER.

---

Appeal from the Chancery Court of Dyer County.— Hon. Colin P. McKinney, Chancellor.

H. J. Livingston and J. V. Bomer, Jr., for appellants.

N. L. Scobey and Draper & Rice, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

The complainants filed their bill in the chancery court of Dyer county, claiming the ownership of seven hundred acres of land in that county. The chancellor dismissed the bill on demurrer. The case was then appealed to this court.

The complainants are the children of Almira Aseneath Cherry, who intermarried with one Anderson, the father of the complainants. Mrs. Anderson died in 1912. She was the daughter of Daniel Cherry, who died on the 3d of November, 1843, leaving his

will, which devised a very large estate, composed of land, negroes, and miscellaneous personal property to his children. The complainants insist that under this will the land in controversy here was devised to their mother for life only, and, upon her death, it passed to them under the terms of the will.

It will conduce to a proper understanding of the matter to state in brief terms the substance of the whole will, particularizing only the sections (called "items") which specially concerned Mrs. Anderson and her two sisters, Belinda Frances Jones and Mosella Dearbra Cherry. Complainants ᐱclaim that the provisions with regard to these three, that is, the two last mentioned and Mrs. Anderson (formerly Almira Aseneath Cherry), are identical, and should be construed together.

We now state the substance of the will as briefly as possible:

Item 1 provides for the payment of debts. Item 2 bequeaths certain personal property absolutely to the widow. Item 3, using the word "land," devises to the widow the lot on which the testator lived and fifty acres of land adjoining, ten negroes, certain live stock, farming utensils, carriage and horses, household and kitchen furniture "for her use and my children's use while they live with her during her natural life, provided she remain in the state of Tennessee." This item then continues:

"It is my special will and desire for the property I have loaned to my wife Sally Cherry during her

natural life or removal out of the State of Tennessee, that after her death or removal out of the State of Tennessee, that all property which I have loaned her be taken possession of by my sons, Norman Turner Cherry and Calvin Washington Cherry, who I hereby appoint trustees for my daughter Belinda Frances Jones, Mosella Dearbra Cherry and Almira Aseneath Cherry, and said property to be equally divided amongst them, for their support and benefit from time to time as they stand in need of it during their natural lives, and it is my will and desire that if either of my daughters named above, Belinda, Mosella and Almira, should die without leaving lawful issue of their body, then and in that case my will and desire is for the said property [to] return and belong to the surviving one for their use and benefit in trust and for their support during their natural lives, and that said property be not sold from them or either of them, and after their death to be equally divided among their heirs at law, to them and their heirs forever.''

Item 4 devises to his daughter Narcissa Harbert and her husband, John Harbert, certain land, negroes, and other personal property. Item 5 devises to his daughter Louama Partee and her husband Hiram Partee, land, negroes, and other personal property. Item 6 devises to Norman T. Cherry and Calvin W. Cherry, as trustees for the five children of his deceased daughter, Louisa J. Jones, land, negroes, and personal property. Item 7 devises to Hiram Partee,

as trustee for testator's daughter Drusilla B. Read, for her personal use and benefit, land, negroes, and personal property.

Item 8:

"I give unto Norman T. Cherry and Calvin W. Cherry, trustees for my daughter Belinda Frances Jones, the following property, viz.: [specifying lands, negroes, and personal property] and it is my will and desire that said property shall be for the use and benefit of my said daughter in the hands of my said trustees, and after her death for it to be equally divided among her children, all the above property she has now in her possession (except the land she is now living on, the 315 acre tract only), and the one-third of the negroes I have loaned to my wife Sally Cherry after her death or removal out of Tennessee. Also I give unto Norman T. Cherry and Calvin Washington Cherry as trustees for my daughter Belinda Frances Jones one negro boy named Larry and after her death to be equally divided among her children."

Item 9:

"I give unto Norman T. Cherry and Calvin W. Cherry, as trustees for my daughter Mosella Dearbra Cherry and for her benefit and for her use the following property named hereafter [specifying lands, negroes, and other personal property], and the one-third of the negroes I have loaned to my beloved wife Sally Cherry and their increase [giving the names of certain negroes], after her death or removal out of the State of Tennessee; and after her said Mosella's

death, the whole legacy to be divided among her children, if any, and if she should die without lawful issue, my will and desire is for the said property to be equally divided amongst my daughters, Belinda F. Jones and Almira A. Cherry, to them and their heirs forever."

Item 10:

"I give unto my sons Norman T. Cherry and Calvin Washington Cherry as trustees for my daughter Almira Aseneath Cherry the following property for her special use and benefit during her natural life, and if she should die without lawful issue begotten of her body, then in that case my will is for all the property I shall hereafter mention for her, be equally divided among my daughters Belinda F. Jones and Mosella D. Cherry, to them and their heirs forever, viz.: [specifying lands and negroes] and the one-third part of all the negroes I have loaned my beloved wife Sally Cherry after her death or removal out of the state of Tennessee, and if my daughter Almira A. Cherry should die without issue, as I have stated above, my will and desire is that the whole legacy named to her in the trustee's hands aforesaid be divided among my said daughters Belinda and Mosella and their heirs forever."

Item 11 devises land, negroes, and personal property to testator's son Norman Turner Cherry for himself individually.

Then there follows a second item numbered 11, which reads:

"I give unto my son Norman T. Cherry and son Calvin W. Cherry as trustees for my daughter Almira A. Cherry, in addition to what I have mentioned heretofore," specifying certain live stock, and, continuing, "six silver tablespoons, six silver teaspoons, sundry iron castings and queensware, knives and forks, and such articles as I have heretofore given to all my children, who have been married and gone to housekeeping. I wish her to have so as to make her equal with them as near as possible. Also I wish my trustees to expend $500 in money to educate her and clothe her, to come out of my estate, also two beds and furniture and bedstead, one trunk, and if she should die without issue for the property to be divided as heretofore stated."

Item 12 devises to testator's son, Calvin Washington Cherry, land, negroes, and personal property in his individual right.

Item 13:

"I give unto Norman T. Cherry and Calvin W. Cherry, trustees for my daughter Almira A. Cherry one other tract of land lying in Dyer county, Tennessee, containing seven hundred and twelve acres and one-half," describing it.

This is the tract of land in controversy in the present suit.

Item 14:

"I give unto Norman T. Cherry and Calvin W. Cherry, as trustees for my daughter Belinda F. Jones,

one other tract of land lying in Weakley county, Tennessee,'' describing it.

Item 15:

''I give unto Norman T. Cherry and Calvin W. Cherry, as trustees for my daughter Mosella D. Cherry, one other tract of land lying in Weakley county, Tennessee,'' describing it.

Item 16 is devoted wholly to testator's son Calvin W. Cherry, devising him other lands besides those contained in item 12.

Item 17:

''I give unto my sons Norman T. Cherry and Calvin W. Cherry as trustees for my daughter Louisa J. Jones' five children'' two other tracts of land besides those mentioned in item 6.

Item 18:

''It is my special will and desire that if my said sons Norman T. Cherry and Calvin W. Cherry, who are trustees for my daughter Belinda F. Jones, Mosella D. Cherry and Almira A. Cherry, think proper, and if it should so happen that some of said property ought to be sold for the benefit of them, so as to buy them some negroes or other property to assist them, my will is for them to sell it, but never make any title to the purchaser till it is all paid for in full.''

Item 19 directs the executors to sell all the lands owned by the testator not previously mentioned in the will, and goes on to specify tracts of land lying in various counties of the state, and also land lying in the state of Missouri.

Item 20 directs the sale of testator's interest in certain negroes owned with other persons.

Item 21:

"It is my will and desire that after the death of my beloved wife, or her removal out of the State of Tennessee, for all the property which I have loaned her, except the negroes, be equally divided among all my children, to go into the hands of those who have trustees, for their benefit and use in the manner before mentioned, and to the children of my daughter Louisa Jones, they all to have the share of their mother, and that my two sons, Norman and Calvin act as trustees for said children."

Item 22:

"It is my will and desire that all the money that is due me after paying my debts and demands, and after my estate is finally settled by my executors, that same be equally divided among my children Narcissa Harbert, Louama Partee, Norman Turner Cherry, Louisa Jones' five children, Henry, Norman, Mary, Daniel and Calvin Hardy Jones, Calvin Washington Cherry, Drusilla B. Read by her trustee, Hiram Partee, to receive her share for her use and benefit, Norman T. Cherry and Calvin W. Cherry as trustees for my daughters Belinda Frances Jones and Mosella D. Cherry and Almira A. Cherry for their use and benefit and their children forever."

Item 23:

"It is my special will and desire that all the property which I may die possessed with, not mentioned

before, of every description, be divided among my children as I have mentioned before, and that the four girl children named before, Belinda F. Jones, Mosella and Almira, that their trustees receive their portion for their use and benefit, and that Hiram Partee as trustee for my ·daughter Drusilla B. Read receive her portion for her benefit and her children, and N. T. Cherry and Calvin W. Cherry receive as the trustees for Louisa's children for their benefit.''

Item 24 contains general directions to his family concerning the exercise of due care in the execution of written instruments.

Item 25 nominates his sons Norman T. Cherry and Calvin W. Cherry as executors of the will.

Mrs. Anderson died leaving children, the complainants in the present bill, as before stated.

The defendants insist that whatever may be the true construction of the various items of· the will referring to the three daughters mentioned in item 3, yet item 13 was separate and independent, and devised the land in controversy to Mrs. Anderson (Almira Cherry), an equitable estate in fee, subject only to the control of a trustee for her benefit in the way of making a sale, if necessary, as provided by item 18 and for management. The first objection urged by complainants to this construction is that item 13 does not use the word ''heirs,'' and therefore under the common law, as it stood in this State in November 1843, when the will went into effect, the fee was not in any event devised, but only a life

estate. This is a mistaken view. It was not necessary at common law to use this word in a devise in order to carry a fee. 4 Kent, Com. margin, page 7, note F. 6 Bac. Abridg., pp. 14–18; 3 Bac. Abridg., 424Bb, pp. 425, 426; 2 Underhill on Wills, 684. It is clear that under item 13 the trustees took an estate in fee, unless this item be controlled by other items under a principle presently to be stated, and, as said by Underhill:

"It is a well-settled principle of construction, both at law and in equity, that under a devise to trustees of a legal estate in fee for the benefit of A or for the benefit of a class of persons, the testator will be presumed to intend that the beneficiaries shall take an equitable interest in the property of precisely the same extent as the legal interest which is expressly vested in the trustees. This rule is recognized where the testator has neglected to point out the character and extent of equitable interest of the beneficiaries in the absence of an expression of a contrary intention, showing that he intended them to take less than a fee." Id., vol. 2, section 683.

It is next insisted in behalf of the complainants that the provisions of item 13 are restrained and limited by those of items 3, 8, 9, and 10, and that items 14 and 15, in respect of the separate tracts therein devised to Belinda and Mosella, are likewise so restrained and limited.

It is insisted that items 3, 8, 9, and 10, define the terms of the trust for the three sisters, Belinda,

Mosella, and Almira, that they all should be construed together, and that without such construction, thereby determining the harmonious terms of a trust common to all, applied to distinct pieces of property, it would be impossible to intelligently apply the two residuary clauses designated in the will as items 22 and 23. It is insisted that items 13, 14, and 15 are but additional clauses to items 3, 8, 9, and 10, or mere accretions thereto. The rule upon the subject thus indicated is laid down in *Fox* v. *Fox,* 102 Tenn., 77, 87–89, 50 S. W., 765. The opinion quotes the statement of the rule as laid down in Jarman on Wills, Redfield on Wills, and Williams on Executors, and summarizes the points of the definition as follows:

"The crucial inquiries are whether the legacies are given expressly on the same terms as former ones, or in substitution for the former, or in addition, as an accretion to a former legacy. In all these cases the added or substituted legacy will be subject to the same conditions as the former one, but this is not the rule where the legacies are independent and not substituted or added."

Before directly testing item 13 by the rule just stated we shall consider the meaning of items 3, 8, 9, and 10. Prior to entering upon this last inquiry, however, it is proper to note the conflict between items 3 and 21. It is perceived, on inspection of item 3, that the property therein devised to the widow for life was to be divided equally between the three daughters, Belinda, Mosella, and Almira,

while under item 21 all of the property embraced in item 3, except the negroes, was to be divided equally between all of the children of the testator, counting the children of the deceased daughter, Louisa, as representing her interest. It is also perceived that under items 8, 9, and 10 the negroes embraced in item 3 were devised, one-third of them each to Belinda, Mosella, and Almira. Thus it appears that all of the property purporting to have been disposed of in item 3 was taken out of that item and disposed of under later items. Under the rule that subsequent provisions in a will, when in conflict with prior ones, will control, it appears that there was nothing at all disposed of in item 3 in respect of the three daughters, Belinda, Mosella, and Almira. Therefore that item cannot be considered as defining the terms of the trust. Now, passing to item 8, it seems clear that the property therein disposed of was devised to the trustees for the benefit of Belinda for life, with the remainder to her children. This is the meaning of the language "that the said property shall be for the use and benefit of my said daughter in the hands of said trustees and after her death for it to be equally divided among her children." The same language occurs in the last sentence of that item, disposing of the negro boy named Larry. *Owen* v. *Hancock,* 1 Head (38 Tenn.), 563, 565.

Under item 9 the property intended for Mosella is devised to the trustees "for her benefit and for her use," and after Mosella's death "the whole legacy

to be divided among her children, if any, *and if she should die without lawful issue,* my will and desire is for the said property to be equally divided amongst my daughters Belinda F.    Jones and Almira A. Cherry, to them and their heirs forever.'' The language which we have italicised would, at common law, have created an estate tail.    As to indefinite failure of issue, see *Randolph* v. *Wendel,* 4 Sneed (36 Tenn.), 647; *Bramlet* v. *Bates,* 1 Sneed (33 Tenn.), 554; *Nott* v. *Fitzgibbon,* 107 Tenn., 54, 64 S. W., 26.    It does not appear that Mosella ever had any child or children. As to preference, in devises involving real estate for construing the word ''heirs,'' ''heirs of the body,'' etc., strictly, with a view to the stability of titles, see *Scruggs* v. *Mayberry,* 135 Tenn., 586, 601, 604, 188 S. W., 207.    And see *Speight* v. *Askins,* 118 Tenn., 749, 102 S. W., 74.

In *Nott* v. *Fitzgibbon,* 107 Tenn., at page 58, 64 S. W., at page 27, quoting with approval from the opinion of Sir L. SHADWILL, V. C., in *Machell* v. *Weiding,* 8 Sim., 4, it was said:

''That it was perfectly manifest that the testator did not intend the estate to go over so long as any issue of the first taker were in existence; and I consider it . . . to be a settled point that, whether an estate be given in fee or for life, or generally, without any particular limit as to duration if it be followed by a devise over in case of the devisee dying without issue, the devisee will take an estate tail.''

The opinion in *Nott* v. *Fitzgibbon* proceeds:

"In discussing this and other cases, Mr. Jarman, in his very learned and exhaustive Work on Wills, in his second volume, star page 139 (page 556), says: 'It is to be observed that where the person on whose general failure of issue a devise is expressly made expectant is the heir at law of the testator, he becomes, by the application of the rule under consideration, tenant in tail by implication in precisely the same manner as if there had been a prior devise to him and his heirs in the will.''

So it appears that the person mentioned in the ninth item of the will, on whose death without lawful issue the ultimate limitation over turned, took an estate tail. This estate therefore fell under the control of our Act of 1784, chapter 22, section 5, which is reproduced in Thompson's Shannon's Code in the following language in section 3673:

"Any person seised or possessed of an estate in general or special tail, whether by purchase or descent, shall be held and deemed to be seised and possessed of the same in fee simple fully and absolutely without any condition or limitation whatsoever, to him, his heirs and assigns, forever, and shall have full power and authority to sell or devise the same, as he thinks proper; and such estate shall descend under the same rules as other estates in fee simple.''

It appears, therefore, that under item 9 Mosella took an estate in fee in the lands covered by that act. Our Act of 1851–52, chapter 91, section 3 Thomp-

son's Shan.'s Code, section 3675), does not apply, as the will before us went into effect in 1843.

The next item, No. 10, is subject to the same solution. In addition, we have a line of cases which hold in substance that where an estate is created in fee or for life, and on this estate another is conditioned to arise, by way of executory devise, on the occurrence of a given event, and that event does not occur, so that the estate over cannot vest, then the first estate continues, and if a life estate, it is enlarged into a fee. *Owen* v. *Hancock,* 1 Head (38 Tenn.), 565-568; *Alston* v. *Davis,* 2 Head (39 Tenn.), 266; *Petty* v. *Moore,* 5 Sneed (37 Tenn.), 126; *Cowan* v. *Wells,* 5 Lea (73 Tenn.), 682; *Nott* v. *Fitzgibbon,* 107 Tenn., 54, 64 S. W., 26; *Williamson* v. *Tunis,* 107 Tenn., 83, 64 S. W., 10. So in the present instance, it appearing that Mrs. Anderson had children born to her, the present complainants, and having herself died, it was impossible for the estate over to vest, so the fee became vested in her. But her children could not take any estate under such a devise, but only by inheritance. *Owen* v. *Hancock,* supra; *Nott* v. *Fitzgibbon,* supra. But in case of a conveyance by the first taker the right of inheritance would be defeated. *Owen* v. *Hancock,* 1 Head (38 Tenn.), 563, 567, 568; *Williamson* v. *Tunis,* 107 Tenn., 83, 84, 87, 88, 64 S. W., 10. In any event, if complainants were claiming, not under the will but as heirs of their mother, they would be estopped by her deed.

We have already shown that item 3 of the will was superseded by later provisions, so that it could not stand as defining the terms of the trust in favor of the three daughters, Belinda, Mosella, and Almira. But let it be assumed that those terms could be so used, then we are of the opinion that that item is subject to the same construction we have given item No. 10.

Therefore, if item No. 13 be ranged under the provisions of items 3 and 10, the result would not be different, as to the denial of any right in complainants to claim the land, since at appears their mother sold and conveyed it while in life to the predecessors in title of the defendants.

But we do not think that item 13 falls within the scope of the previous provisions of the will. It contains no particular reference to either of the prior "items," nor was the land therein devised in substitution for any property devised in any prior item. Nor do we think it was technically an "addition" or "accretion" to any former legacy or devise, but that it was an independent devise. If it were the purpose of the testator to range this devise under the terms of any other, it would have been easy to do so in express terms. True it is that express terms are not needed for such a purpose, but a construction so ranging or classifying No. 13 is not at all essential to the understanding of it, nor to an intelligent comprehension of its meaning. It is a very striking fact that

the testator, in items 13, 14, and 15, gave to each of the three daughters, Belinda, Mosella, and Almira, a separate and distinct tract of land in the same terms, and without any attempt to fetter it, by any special restrictions therein contained, or by reference to other provisions. To say the least, this would give rise to a grave doubt whether it was not his purpose to give the tracts devised in these ''items'' free from the fetters which he attempted to impose in ''items'' 3, 9, and 10, which proved unavailing because of the conditions therein contained, based on an indefinite failure of issue of the first taker. If such doubt can be reasonably entertained, it should be resolved in favor of the first taker, the heir of the testator. As said in *Fox & Wheatly* v. *Fox,* 102 Tenn., 77, 92, 50 S. W., 765, 768:

''We think it is a safe canon of construction that if the language of a will leaves it doubtful whether or not the testator intended to incumber a legacy with a trust, or in any way restrict or limit it, the benefit of the doubt should be given the legatee.''

And again:

''It is a rule well established that in the construction of wills the law favors the heir, and that the property shall, as near as may be consistent with the will, follow the laws of descent and distribution, and there should be an intent manifest in the will to effect a change.''

The tract of land involved was sold and conveyed by the mother and father of the complainants nearly sixty years ago, and is now possessed by numerous defendants. Truly it would be a deplorable thing, after the lapse of so many years, to disrupt and displace all of these rights on a mere doubtful construction of a will.

We have not overlooked the fact that the devise in "item" 13 was to trustees, and that the terms of the trust are not therein stated. We have seen that if items 3 and 10 be resorted to for the discovery of these terms, the ultimate result would not be different; but it is apparent that item 3 could not have been referred to, if for no other reason, because the land therein devised was not subject to sale, while there was a general power of sale as to the lands of Belinda, Mosella, and Almira provided in "item" 18 of the will, indicating that it was the purpose of the testator that the withholding of that power was confined only to the lands purporting to have been devised to the three daughters in "item" 3. So that it seems to us that the purpose of the trust as applicable to the lands devised in items 13, 14, and 15 was merely that the trustees should hold the legal title, with a view to the supervision of any sale that might be advised or made. The sale was made for more than $6,000, Anderson, the husband of Almira, joining therein both as substituted trustee and as husband of Almira. One of the purchasers was a person named as one of the original trustees in the

will. Whether he ever accepted the trust, or, if so, whether he had resigned before becoming such purchaser, does not appear, nor does it affirmatively appear whether the sale was made for reinvestment, but since Mrs. Anderson executed the deed herself the fair presumption is the sale was for her benefit, as indicated in item No. 18. It is needless now to inquire definitely as to this matter, since at all events the trusteeship ended with the life of Almira, and she remained under the will, as we have previously shown, the owner of a full equitable estate in the land, in fee, incumbered only by the bare legal title in the trustee, and complainants base their claims to the land on the theory that their mother obtained only a life estate, and that the remainder was devised to them in the will.

We need not authoritatively consider the further point made by defendants that, since the trustee must have been vested with the legal title in fee in order to sell the land, therefore Mrs. Anderson under the sale previously stated must, for this reason, have owned the equitable title in fee, or the reply suggested by complainant that the conclusion would not follow as to the quantity of the trustee's estate because they had power to sell only for reinvestment; but we intimate the opinion that the power of sale conferred was not merely for reinvestment, but for the benefit generally of the beneficiaries of the trust.

Anderson v. Lucas.

We need not consider specifically items 11, 22, and 23 of the will since the construction we have given the other items is not out of harmony with them.

On the whole, we think the chancellor reached the correct conclusion, and his decree dismissing the bill is affirmed, with costs.