560

**MONROE, Plaintiff, v. LECKEY et, Defendants.**

Common Pleas Court, Miami County.

No. 35062.   Decided April 16, 1956.

Shipman & Shipman, Troy, for plaintiff.
Faust & Harrelson, Troy, for defendant.

## OPINION

By PORTER, J.

This is an action for ejectment, which hinges on the construction of the will of one William Dilbone.

The facts are set forth in an Agreed Statement filed October 22, 1953, pertinent parts of which are as follows:

On August 28, 1904, one William Dilbone died testate owning in fee simple the real estate in the petition described, to wit:

Situate in the County of Miami, State of Ohio, and in the Township of Springcreek.

Being One hundred and Seventeen (117) acres in the Northeast Quarter of Section one (1), Town One (1), Range Twelve (12), M. R. S.

Also Six (6) acres in the Southwest corner of the Southeast Quarter of Section Two (2), Town One (1), Range Twelve (12), M. R. S.

Said William Dilbone died in Miami County, Ohio, and his estate was administered in the Probate Court of this County. At the time of his death he was survived by his widow, Mary Dilbone, and Elmer W. Dilbone, son, and Effie Dilbone, daughter, and one grandson, G. R. Leckey, who was the only child of Mary Elizabeth Dilbone Leckey, who predeceased said William Dilbone.

The will of William Dilbone was admitted to Probate Court of this county, and a true copy of said will is as follows:

## "LAST WILL AND TESTAMENT
### OF
### WILLIAM DILBONE

Probated September 12, 1904           No. 12290
Probate Court           Miami County

In the name of the benevolent Father of all I William Dilbone being of lawful age and of Sound mind and memory do make and publish this my last will and testament

Item first I desire that all my just debts and funeral expences be fully paid and as Soon as practibel after my death a Suitable monument be placed at my grave to cost not more than five hundred Dollars

Item 2d I give and bequeath to my Son E W Dilbone thirty acres off the home farm where I now reside including the House and Barn and forty acres off the Wiley farm opisite the home farm =

Item 3d I give and bequeath to my wife Mary E Dilbone in lieu of dower all the balance of land, untill my daughter Effie M arrives to the age of twenty one years also all my household good -

Item 4 When my daughter Effie M arrive at the age of twenty one years I give and bequeathe to her the Seventy acres known as the Croy farm

Item 5 After the death of my wife Mary E Dilbone I desire that the balance of land being about one hundred and twenty one acres be Divided between my Son and daughter or the heirs of their bodeys Share and Share alike according to value Bilding not to be included in valuation Should either of them die without children their Intrest to revet back to one living or the heirs of their Bodies So that the land Shall remain in the family Should either of them leave husband or wife. They to have the right of Dower until death or remarrige then to return to the family

Item 6 In the final division of the land between my Son and daughter I desire that my Daughters Share Shall comence on the East Side of the

Linsey land and extent far enough to give her an equal share as above Stated Should my Son and Daughter not be able to make the division themselvs then the division to be made by appraisers chosen as follows each one to choose one appraiser they to choose the third

Item 7 I give and bequeath to my grand Son Glenn Leckey Eight hundred dollars to be paid out of my money or credits when he arrives at the age of twenty one years the balance of money or credits after pay above Stated bequeath I give to my wife"

Effie Dilbone, the daughter of William Dilbone, died on or about April 28, 1911, when a little past the age of twenty-one years, unmarried, leaving no issue.

Mary E. Dilbone, wife of William Dilbone, died on or about March 18, 1922, unmarried, and with no further issue.

On April 13, 1922, an affidavit was filed of record by Elmer W. Dilbone, stating therein that he is the son of William Dilbone, the testator. That his sister, Effie M. Dilbone, died intestate, unmarried, and without issue; and that Mary E. Dilbone, his mother, wife of William Dilbone, died March 18, 1922; and further in the affidavit, Elmer W. Dilbone states that the title to the 121 acres, more or less (the land in question in this suit), is now vested in him in fee simple. Said affidavit was recorded in Volume 176, Page 430, of the Deed Records of Miami County, Ohio.

Elmer Dilbone, son of William Dilbone, died on or about April 26, 1950; leaving Ardella C. Dilbone, as his widow, but without issue.

The only child of William Dilbone, who died leaving heirs, was Mary Elizabeth Leckey, who left one son, Glen. Glen died in 1945, leaving as his widow the defendant, Mollie Leckey, and as the heirs of his body a daughter, the plaintiff in this action, Ida Monroe, and the defendants, Ray C. Leckey, Stella Grim, and Mary Ellen Anthony, her brothers and sister.

Elmer Dilbone, son of William Dilbone, together with his wife, Ardella C. Dilbone, conveyed the within described premises by general warranty deed a life estate to Elmer W. Dilbone and Ardella C. Dilbone, and the remainder interest to Clayton Conover and Ardella L. Conover, dated August 26, 1931, recorded in Volume 204, Page 405, of the Deed Records of Miami County, Ohio.

Said Elmer Dilbone, Ardella C. Dilbone, Clayton Conover, and Ardella L. Conover, executed a mortgage on said premises, and on the 25th day of July, 1933, an action was brought in the Common Pleas Court, being Cause No. 26838, foreclosing said mortgage, and on the 31st day of October, 1933, Charles Green, Sheriff of Miami County, Ohio, conveyed by Sheriff's Deed the title to said premises to one B. W. Conover, recorded in Volme 211, Page 337, of the Deed Records of Miami County, Ohio.

Thereafter, B. W. Conover and Christabell Conover, husband and wife, conveyed within described real estate to Christabell Conover for life and the remainder to Ardella C. Dilbone and Elmer Dilbone, dated November 3, 1933, and recorded in Volume 211, Page 373, of the Deed Records of Miami County, Ohio.

Thereafter, Benjamin W. Conover died, and on February 9, 1934, Christabell Conover, widow of Benjamin W. Conover, conveyed by Quit

Claim Deed her life estate to Ardella C. Dilbone and Elmer W. Dilbone, remainderman, thereby vesting the entire title in fee simple in Ardella C. Dilbone and Elmer W. Dilbone, husband and wife, said deed being recorded in Volume 213, Page 68, of the Deed Records of Miami County, Ohio.

Thereafter, Elmer W. Dilbone and Ardella C. Dilbone, husband and wife, conveyed the fee simple title to said real estate to Clyde Ward and Emma Ward, dated January 3, 1948, and recorded in Volume 267, Page 450, of the Deed Records of Miami County, Ohio.

Thereafter, Clyde Ward and Emma Ward on April 27, 1950, executed and delivered to defendant, The Third Savings and Loan Company, a promissory note in the principal sum of Ten Thousand Dollars ($10,000.00) with interest at five per cent (5%) and also properly executed and delivered to said defendant a mortgage covering the said premises as security for the payment of said note according to the tenor thereof. Said mortgage is recorded in Book 236, Page 19, of the records of Mortgages of Miami County, Ohio

Thereafter, on March 27, 1951, Clyde Ward and Emma Ward, husband and wife, conveyed an undivided one-half interest to Charles D Ward and Ramona Ward, recorded in Volume 292, Page 240, of the Deed Records of Miami County, Ohio.

At page 12 counsel agree that the questions to be determined by the Court are:

1. Did the will of William Dilbone create an entailed estate as to said real estate (121 acres), devised under Item 5 of his will?

2. If so, in whom does the title to said real estate vest upon the death of Elmer Dilbone, testator's last surviving child, who died without issue?

(a) Does such real estate pass as intestate property, i. e. to the heirs at law of William Dilbone, Ida Monroe, plaintiff, and to her defendant brothers and sisters,

or

(b) Did title vest in fee simple in Elmer Dilbone on the death of his sister, Effie, who died without issue?

When Item 5 of the Will is examined in the light of the authorities hereinafter discussed, it will be seen that the questions to be decided by the Court are not that simple.

Where a will devises realty to one "**or** the heirs of her body" the use of the disjunctive shows the gift was to be to one **or** the other and not and the other. "Or" must be taken in its ordinary meaning unless the intent of the testator gathered from the entire will requires a different meaning. See Pearson v. Olsen, 310 Ill. 252, 141 N. E. 736.

The Court concludes that the use of the "or" clause does not in and of itself create an entailed estate, and there is nothing in the will to require that inference. It remains to be decided whether or not a gift over in the event of the death of the first taker without children creates an estate tail by implication, either as such or because of the wording of this particular will. If an estate tail is not created by implication, it is next necessary to determine what estate is created, or whether it went intestate. If it is a gift in fee, with an executory devise upon the death

of the first taker without children, does the survivor not only take the fee in one half as a result of the gift over, but in the other half because of the failure of the gift over upon the death of the executory devisee prior to that of the first taker? A discussion of these questions follows, beginning with a discussion of the general law on creation of estates tail by implication upon death of the first taker without issue.

A gift to A in general terms, not showing what estate is intended, followed by a gift over on **indefinite** failure of **issue** passes an estate-tail. Page on Wills, Section 1095, n. 10; citing Arnold v. Wells, 100 Fla. 1470, 131 So. 400; Hertz v. Abrahams, 110 Ga. 707, 50 L. R. A. 361, 36 S. E. 409; McCarthy v. Walsh, 123 Me. 157, 122 Atl. 406; Jones v. Gulf Refining Co., 295 Pa. 92, 144 Atl. 895; Crawford v. Woodrow, 314 Pa. 497, 171 Atl. 894; Anderson v. Lucas, 140 Tenn. 336, 204 S. W. 989.

A gift over on definite failure of issues does not show that a fee tail was devised. Page, Section 1095, n. 11; Gibbs v. Turner, 140 Kan. 53, 34 P. (2d) 564; Symmes v. Moulton, 120 Mass 343; McClintic v. McClintic, 259 Pa. 112, 102 Atl. 416.

Ohio has definitely repudiated the common law presumption without the aid of the statute, and holds that definite failure of issue is to be presumed. Simes, Law of Future Interests, Section 339, n. 26, citing among other cases **Parish's Heirs v. Ferris, 6 Oh St 563 (1856)**; **Niles v. Gray, 12 Oh St 320**; **Anderson v. United Realty Co., 79 Oh St 23 at 49,** 86 N. E. 644, 51 L. R. A. (N. S.) 477 (1908) (dictum); **Briggs v. Hopkins, 103 Oh St 321**, 132 N. E. 843 (1921).

"Definite" failure of issue means failure of issue at the death of a particular person. Indefinite failure of issue means failure of issue however that may occur, either by the death of the named person without issue, or by the death of the last survivor of his issue. Simes, Sec. 335.

Even in courts recognizing the presumption in favor of such indefinite failure of issue, the weight of authority is to the effect that if the gift over is to a person "then living" or "surviving" the presumption is rebutted and the "definite" construction prevails. Simes, Ibid, Sec. 340.

In addition to the Ohio cases cited in Simes, see **Miller v. Miller,** 10 O. N. P. (N. S.) 630, aff'd. **80 Oh St 563.**

If the language used by Mr. Dilbone provided for a limitation over on failure of **issue** instead of **children,** it would be a stronger case for the plaintiff than it is for saying that it may be implied from this that the testator intended to create a fee tail estate. Therefore, a fortiori, where there is a devise in fee to A, with a limitation over in the event A dies without children, an estate tail is not created by implication, unless there is something else in the will which compels the inference. There is nothing else in the will in question that compels that inference.

The Court finds that on the facts before it the son and daughter each took a fee simple title—a base fee simple title, with an executory devise in the event either died without children. Or, as stated in Anderson v. Realty, supra, at page 49, the estate of the prior devisee is one in fee simple, subject to an executory devise in the event of his dying without issue at his death.

When the daughter died without children the limitation over took effect and as to her half interest the son took a fee simple absolute.

Upon the death of the daughter the limitation over of the half devised to the son failed because of the death of the executory devisee. Upon such failure the first taker's estate took effect as a fee simple absolute, Thompson on Real Property, Perm. Ed., Sec. 2268. Here it is stated:

". . . if the grant or devise to the first taker is in fee and the limitation over fails **for any cause,** the first taker's estate takes effect as a fee simple absolute." (Emphasis supplied.)

In this case the estate of the son, the first taker of one-half was a fee simple and the limitation over failed, the "cause" being that the daughter to whom there was a gift over in the event of the son's death without children predeceased the son. Hence, the first taker's estate took effect as a fee simple absolute. In order to fully understand why this happened consider for a moment the nature of the estate created. It was a fee simple title in the first taker, subject to an executory devise in the event of his dying without children. In effect it must be inferred as meaning dying without children **before his sister did.**

The limitation over failed because the daughter died before the son, leaving no children or heirs of her body. Hence, the first taker's estate took effect as a fee simple absolute.

It will be found helpful to closely examine the cases in note 30, page 815, of Vol. 4, Thompson on Real Property. These are:

Doe v. Watson, 17 Dec. U. S. Sup. Ct. 581; Outland et al v. Bowen et al, 115 Ind. 150, 17 N. E. 281; Sullivan v. Garesche, 229 Mo. 496, 129 S W. 949; Cleveland v. Havene, 13 N. J. Eq. 101. 78 Am. Dec. 90; Den v. Gibbons, 22 N. J. L. 117, 51 Am. Dec. 253; Van Horn v. Campbell, 100 N. Y. 287, 3 N. E. 316, 771; **Anderson v. United Realty,** 79 Oh St 23, 86 N. E. 644, 51 L. R. A. (N. S.) 477.

However, it is planned to discuss only the Ohio and Missouri cases in this opinion.

In the Ohio case the executory devise failed because the first taker died leaving issue. In the Sullivan case the resemblance to the facts in this case is closer. It involved a will in which there was a devise to two daugters in fee, subject to being cut down to a life estate in the event of their death without ever having married. The words of qualification were:

"In the event of the death of my said daughters, Kate and Julia, before marriage, the said property shall be divided equally **among my surviving children."** (Emphasis supplied.)

There were no surviving children. They all died before the two daughters.

In that situation the Court noted the devise may be contingent not only on the event that is to determine the fee, but also on the **being** of the person to take when the event occurs.

There, as in this case, it could be observed that the will showed an intention on the part of the testatrix to dispose of her whole estate. What the Court said about the will before it could be appropriately said about the Dilbone will:

"On the death of the testatrix that fee vested in these two daughters, subject to be determined at their death, if they should not have married; but if that event should occur the will did not leave the fee to revert

to the heirs of the testatrix, but provided how it should go, that is, to 'my surviving children' who, in that event would take as purchasers, not as heirs.

"But the will does not expressly provide for one possible event, that is the death of all her other children before that of the two daughters named, and afterwards their death without having been married. But there was no necessity for providing for that event, because then one of the contingencies on which the fee was to be determined would not have occurred; that is, there would be no one to whom the executory devise could apply to take the fee." (Emphasis supplied.)

This case is helpful for another reason and that is the statement in the opinion that one of the distinctions between remainders and executory devises is that a remainder follows a particular estate, while an executory devise follows the fee. 2 Washburn, Real Property, Sec. 1757. "After a particular estate something remains, after a fee nothing. . . . If there be no executory devise to take effect on the happening of the condition on which the fee was to determine, or no one to take it, the fee is not cut down, but remains unless there is something else in the will to show the intention of the testator was that the fee should be determined absolutely on the happening of the condition, without reference to the devise over." (Here again the emphasis is supplied.)

The Court does not find anything in the Dilbone will to show that the testator's intention was that the fee should be determined absolutely. Dilbone's explanation that he provided as he did, so that the land would be kept in the family, is consistent with this holding. It is more reasonable to think that he gave that explanation to show why he wanted the farm to go to either the son or the daughter than to show an intent that in the event both died without children he wanted the farm to go to his heirs.

This is also true even though in the Dilbone will, in Item 5, the word "revet" is used, presumably meaning "revert." The fact remains that in the first sentence in Item 5 the testator gave to his son and daughter, subject to the life estate of their mother, the 121 acre tract to be divided between them, share and share alike, according to value, the buildings not to be included in the valuation. In that sentence he gave a fee simple title—everything that he had, so what follows is by way of a limitation over—"should either of them die without children their interest to revet back to one living or the heirs of their bodies so that the land shall remain in the family . . . ."

This Court feels that even though the word "revet," which suggests the existence of a reversion or a remainder, is used, that the intent of the testator evident from the four corners of the will is that the son and daughter take a fee simple title subject to an executory devise if either died without children.

So much for the rules necessary to note to determine whether or not the use of the "or heirs of the body" creates an estate tail or whether one is created by implication when a will provides for a gift over upon death of the first taker without issue, executory devises, and the effect on the estate of the first taker of the failure of the executory devise for any cause.

There is a qualification that must be made to all of these rules, and that is that they govern unless a contrary intent is manifested by an examination of the entire will. In all cases of will construction the pole star is the intention of the testator and such must be gathered from the four corners of the will. In determining what that intention is there is no substitute for close analysis of the terms of the will. We must pass to such analysis, but before doing so it is well to note certain other rules which are called into play.

First it is necessary to note that "the law favors the vesting of estates, and in case a will contains apt words to dispose of the testator's entire estate, that construction will be given it." Stokes v. Weston, 142 N Y 433.

The next is that even though the intention of the testator governs if he uses words which clearly create one estate, though he designed another, his intention must yield to the rules of law. Hertz v. Abrahams, Ga., 36 S. E. 409, Syl. 1.

The next is that there is a presumption against partial intestacy. Page on Wills, Lifetime Ed., Vol. 2, Sec. 9226:

"Under ordinary circumstances, a man makes a will to dispose of his entire estate or, at least, of his estate as it exists at the time he makes his will. If, therefore a will is susceptible of two constructions, by one of which the testator disposes of the whole of his estate, and by the other he disposes of a part of his estate only, and dies intestate as to the remainder, the courts will prefer the construction by which the whole of testator's estate is disposed of, if this construction is reasonable and consistent with the general scope and provisions of the will."

Ibid, citing, among others, **Collier v. Collier, 3 Oh St 369; Davis v. Corwine, 25 Oh St 668.**

"A construction which results in partial intestacy will not be used unless such intention appears clearly. It is said that the courts will prefer any reasonable construction, or any construction which does not do violence to testator's language, to a construction which results in partial intestacy.

"The presumption against intestacy is especially strong where testator has attempted to insert a general residuary clause." **Ibid.**

(There is no residuary clause in the Dilbone will.)

The reason that this is cited is because it seems to this Court to hold the key to the approach which must be made in the analysis of Item 5 of the Dilbone will, inasmuch as it indicates that the estate of the son in the half of the 121 acres, which he got directly from his father —it indicates that the estate of the first taker is to be construed as a fee, subject to an executory devise, in the event of death without children, unless a contrary intention and purpose of the testator is clearly manifested.

The problem then becomes one of determining from the four corners of the will whether such a contrary intention and purpose is clearly manifested.

A review of the cases digested in Words & Phrases under "children" and under "issue" leads to the conclusion that as a general rule the use of the word "children" excludes descendants beyond those of the

first degree. The word in its natural sense embraces only the immediate descendants of the testator, and does not include descendants of a more remote degree. Vol. 7, Words & Phrases, Pages 118, 119.

The word "children" will, however, be held to include issue "whenever reason so demands." Ibid, P. 119. I think it does demand it in this case, though the presumption is otherwise. To hold otherwise would have made possible a result that could not have been intended by the testator, namely, the property might have been taken away from the issue of the first decedent and given to the issue of the survivor. Suppose Effie had died leaving no children but grandchildren. The will specifically said that if they died without children there was a gift over to the survivor. If "children" did not mean "issue" the executory devise would have taken effect.

Suppose that Elmer had died previously, leaving no children, but grandchildren or "issue." The will provided that the gift over on the death of one without children was to the survivor "or the heirs of their bodies." So there would be a good gift over to the issue or heirs of the body of Elmer. Elmer might have had children at his death, and as a result the executory devise over as to the half which he took would have failed. Then if the children died leaving children, and Effie died without children, but with grandchildren, there would have been an executory devise to the grandchildren of Elmer, unless the word "children" includes "issue." It has been concluded that it does.

Now we pass to the examination of Item 5, to see if it requires a construction which would favor the plaintiff. Let us begin by noting the wording—"should either of them die without children their interest to revet back to one living or the heirs of their body so that the land shall remain in the family."

In the light of the presumption against intestacy, I would say that the inference is warranted that the testator did not intend one-half to go one way and one-half to go another way. That would have been the result if the estate of the son was not enlarged to a fee simple absolute in the half that he took, upon the failure of the executory devise upon the death of the executory devisee. The result required by reason seems to this Court to be the same one required by the application of the rules, namely, that it may be inferred that the testator's intention was that the survivor get it all, and only to that extent did he intend to keep the property "in the family." More about that later.

How is this inference affected by what follows, namely, "should either of them die leaving husband or wife. They to have the right of dower until death or remarriage then to return to the family." It seems reasonable to infer that the intention of Mr. Dilbone was that only the wife or husband of the one who died first should have dower until his or her death or remarriage. If he had meant otherwise the language is such as to void for uncertainty because "then to return to the family" would be incapable of ascertainment. That is, it would have been impossible to ascertain who the "family" was.

This conclusion is reinforced by the inference that is drawn from the clause which appears later in the will, to the effect that there shall be a "final" distribution between the son and daughter.

Among the clauses in Item 5 which have to be examined to see how they reflect the intent of the testator, is the second "or heirs of their bodies" in line 7 of Item 5. While ineffective to create an entailed estate, it may be argued that it shows that the testator thought at least that the son or the daughter would have children and therefore, that he did not contemplate and provide for the contingency that both son and daughter would die without children.

However, he used language which under the rules requires a different result and, for the sake of consistency in real property rules, those rules must prevail.

The phrase "so that the land shall remain in the family" has already received some attention but deserves more. It is in line 8-9 of Item 5, and clearly is an explanation of what immediately precedes it, namely, the gift over to the survivor of the son or daughter. In other words, it is the testator's explanation of why he is making this gift over and not an indication of an intent to entail the property.

Next, how about the phrase "should either of them leave husband or wife"? (Emphasis supplied.) It seems to this Court that it is clearly part of the sentence and part of the explanation in line 8-9.

Next—"they to have the right of dower, etc. . . . then to return to the family." This follows in lines 9-10-11 and means what it says—that the spouse of either was to have dower, but "to return to the family" means that the survivor's children would take subject to the dower of the surviving spouse until the latter's death or remarriage. It doesn't show that the testator contemplated and provided for the contingency that both might die "without children."

Next, how about the phrase—"in the final division of land between my son and daughter." This appears in lines 1 and 2 of Item 6, and the word final doesn't necessarily show an intent that they take fee simple title. In other words, this phrase doesn't require a different result than the application of the rules has required. It is consistent with the holding of the Court. It militates against infering an intention on the part of the testator to entail the property.

The conclusion of the Court is that there is nothing in Item 5 to show that the testator failed to devise any part of his estate, or that he intended to create an estate different from that required by the application of the foregoing rules. Hence, the Court finds for the defendants and an entry accordingly should be drawn dismissing the petition at the plaintiff's cost.

If the parties desire to do so this opinion may have the status of findings of fact and conclusions of law to facilitate an appeal.