MARY JOSEPHINE HARWELL *et al. v.* ANGIE T. HARWELL *et al.**

(*Nashville,* December Term, 1924.)

1. **WILLS.** Testator's intention not controlling where conflicting with statute or public policy.

   Testator's intention does not control, where it conflicts with statute or public policy of State. (*Post, pp.* 589, 590.)

2. **WILLS.** Estate tail becomes fee-simple estate under statute, notwithstanding contrary intent.

   Under Shannon's Code, section 3673, estate tail created by will becomes fee-simple estate, notwithstanding testator's contrary intent. (*Post, pp.* 590-596.)

   Acts cited and construed: Acts 1784, ch. 22, sec. 5; Acts 1852, ch. 91.

   Case cited and approved: Speight v. Askins, 118 Tenn., 751.

   Cases cited and distinguished: Polk v. Faris, 17 Tenn., 233; Randolph v. Wendel, 36 Tenn., 668; Middleton v. Smith, 41 Tenn., 144; Kirk v. Fergerson, 46 Tenn., 479; Skillin v. Loyd, 46 Tenn., 563; Wynne v. Wynne, 56 Tenn., 308; Bingham v. Weller, 113 Tenn., 77; Scruggs v. Mayberry, 135 Tenn., 586.

   Code cited and construed: sec. 3673 (S.).

3. **WILLS.** Will held to create estate tail converted into fee simple by statute; ''dying without heirs.''

   Devise to testator's daughter and her "bodily heirs," with limitation over on her death without heirs *held* to create estate tail, converted into fee simple by Shannon's Code, section 3673; "dying without heirs" meaning indefinite failure of issue. (*Post, pp.* 596-598.)

4. **ESTATES TAIL.** ''Estates tail'' defined.

   "Estates tail" are estates of inheritance, descending to heirs of donee's body, and through them to his grandchildren in direct line.

Harwell v. Harwell.

so long as his posterity endures in regular order of descent. (*Post,* p. 598.)

5.. **LIFE ESTATES.** "Life estate" defined.

"Life estate" is not estate of inheritance, but freehold for life of tenant or another. (*Post, pp.* 598-602.)

Acts cited and construed: Acts 1851, 1852, ch. 91, sec. 1.

Cases cited and approved: Loving v. Hunter, 16 Tenn., 4; Settle v. Settle, 29 Tenn., 474; Ward v. Saunders, 35 Tenn., 387; Vaden v. Hance, 38 Tenn., 300; Owen v. Hancock, 38 Tenn., 563; Alston v. Davis, 39 Tenn., 266; Clopton v. Clopton, 49 Tenn., 31; Balch v. Johnson, 106 Tenn., 250; Waller v. Martin, 106 Tenn., 342; Petty v. Moore, 37 Tenn., 126; Cowan, McClung & Co. v. Wells, 73 Tenn., 682; Armstrong v. Douglass, 89 Tenn., 219; Franklin v. Franklin, 91 Tenn., 124; Read v. Fite, 27 Tenn., 328; Grimes v. Orrand, 49 Tenn., 298; Arrants v. Crumley, 48 S. W., 342; Smith v. Smith, 108 Tenn., 21.

Cases cited and distinguished: Williams v. Williams, 57 Tenn., 567; Boyd v. Robinson, 93 Tenn., 1.

6. **WILLS.** "Bodily heirs" not construed to mean "children," unless plainly not intended in strict sense, where devise is to one and his bodily heirs with limitation over on death without such heirs.

"Bodily heirs," in devise to named person and her bodily heirs, with limitation over in case of her death without such heirs, will not be construed to mean "children," in absence of statement plainly showing that testator could not have meant to use term in strict sense. (*Post, pp.* 602, 603.)

---

*Headnotes 1. Wills, 40 Cyc., p. 1386; 2. Estates, 21 C. J., Section 58; 3. Wills, 40 Cyc., p. 1599; 4. Estates, 21 C. J., Section 43; 5. Estates, 21 C. J., Section 59; 6. Wills, 40 Cyc., p. 1466.

---

FROM GILES.

---

Appeal from the Chancery Court of Giles County.—
Hon. Thos. B. Lytle, Judge.

Lee & Abernathy, for appellants.

Frank Wade, guardian *ad litem,* for appellees.

Mr. Justice McKinney delivered the opinion of the
Court.

Complainant, Mary Josephine Harwell, insists that
she takes a fee-simple title to the real property devised
to her by the third item of her father's will, which is as
follows:

''I give and bequeath unto my daughter, Mary Jose-
phine Harwell, and her bodily heirs, if she should die
leaving no heir or if she should leave an heir or heirs,
and they should die before they come to their majority
of their years, then said land revert back to my estate
to be equally disposed of. Said lands lying and being
in the 20th district of Giles county, Tennessee, on the
waters of Bradshaw creek, and bounded as follows:
North by the lands of E. C. Sutton; east by the lands of
E. C. Sutton; south by the lands of W. F. Ballentine, de-
ceased; west by the lands of E. C. Sutton.''

The court of civil appeals took a contrary view, and
held that the testator, by the use of the term ''bodily
heirs,'' meant ''children.''

If the general rule of the intention of the testator is to
control, then we would be inclined to agree with the court
of civil appeals; but there is a well-recognized exception
to the effect that when the intention of the testator con-

flicts with a statute or the public policy of the State, the general rule does not apply.

If the language of the will creates an estate tail then, under section 3673 of Shannon's Code (Act 1784, chapter 22, section 5), we must decree that complainant Mary Josephine Harwell takes a fee-simple title, the intention of the testator to the contrary notwithstanding.

In *Polk* v. *Faris,* 9 Yerg., 233, 30 Am. Dec., 400, this court said:

"The statute of entailments, passed in the 13th year of King Edward I. (1285), commonly called the statute *dedonis,* recites that 'where one giveth land to another and the heirs of his body, it seemed very hard to the grantors and their heirs that their will expressed in the grant should not be observed; instead of which after issue born, the grantee had power to aliene his land, contrary to the mind of the giver, and contrary to the form of the gift.' The statute then ordained, "that the will of the giver, according to the form of the deed of gift manifestly expressed, should be observed, so that those to whom the land was given under such condition shall have no power to aliene the land so given, but it shall remain with the issue of them to whom it was given, after their death, or shall revert to the donor or his heirs, if issue fail.'

"This statute would have locked up all lands in the kingdom from creditors, from commerce, and from all the purposes of society. But the fictitious action of common recoveries, and the rule in Shelby's Case afterwards adopted, had some tendency to knock off the fetters created by this statute. And finally, our Statute of 1784,

chapter 22, section 5, coming in aid of the policy of those fictitious actions and of the rule in Shelby's Case, put an end to the effect and operation of the statute *de donis*. It recites that, 'whereas entails of estates tend only to raise the wealth and importance of particular families and individuals, giving them an unequal and undue influence in a republic, and prove in manifold instances, the source of great contention and injustice, be it enacted, etc., that from and after the ratification of this act, any person seized or possessed of an estate in general or special tail, whether by purchase or descent, shall be held and deemed to be seized and possessed of the same in fee-simple, fully and absolutely, without any condition or limitation whatsoever, to him, his heirs and assigns forever, and shall have full power and authority to sell and devise the same as he shall think proper; and said estate shall descend under the same rules as other estates in fee-simple.' This statute, like the rule in Shelly's Case, is a rule, not of intention or construction, but of property, and like it had relation not to the wishes of the donor, but to the interests of the community; both alike tend to control individual purpose for the attainment of a public object, namely, the unlocking of property and the subjecting it to the uses of society. . . .

"In other words, it matters not how strongly or how clearly the grantor may intend that the instrument should not be controlled by the rule of law, yet if the proper construction of the terms which he has used in the entire instrument bring it within the operation of the rule of law, the rule of law, and not his intention, must have effect. So under our Statute of 1784, chap-

ter 22, section 5, it would matter not how clearly the grantor might intend to create an estate tail and not a fee-simple, yet the statute which is a rule of property and of public policy, would have effect against such intention of the grantor, and the estate, in the language of the statute, would be held and deemed, not a fee-tail, but a fee-simple absolute."

In *Randolph* v. *Wendel,* 4 Sneed, 668, it was said: "In endeavoring to ascertain the intention of the testator, judges and chancellors have sometimes forgotten to pronounce the positive rules of law, which cannot be disregarded without producing a distressing confusion in the administration of the rights of property. In ordinary language, says Mr. Jarmon (vol. 2, p. 418), where a testator gives an estate to a person and his heirs, with a limitation over in case of his dying without issue, he means that the devisee shall retain the estate if he leaves issue surviving him, and not otherwise; and where the phrase is, in case the first taker die before he has any issue, or if he have no issue, the intention probably is that the estate shall belong absolutely to the devisee, on his having issue born. But the established legal interpretation of these several expressions is different, for it has been long settled that words referring to the death of a person without issue, whether the terms be, 'if he die without issue,' or 'if he have no issue,' or 'if he die before he has any issue,' or 'for want or in default of issue,' unexplained by the context, and whether applied to real or to personal estate, are construed to import a general indefinite failure of issue, that is, a failure or extinction of issue at any period. A dying without heirs,

or heir, or heirs of the body, is construed by the common law, like a dying without issue, to be too remote an event upon which to suspend a limitation.''

In *Middleton* v. *Smith,* 1 Cold., 144, the syllabus accurately states the decision of the court, and is as follows:

''A devise of land, 'for the benefit of my daughter, Jane, and her bodily heirs,' is operative to invest the daughter with an estate in fee simple. The Act of 1852, chapter 91—copied into the Code, section 2008—has no application to this kind of devise. By the North Carolina Statute of 1784, chapter 22, section 5, which is re-enacted by the Code, section 2007, estates tail, general and special, are entirely abolished.''

In *Kirk* v. *Fergerson,* 6 Cold., 479, the devise was ''to the said Rachel Means, and to her heirs, the natural issue of her body, forever; if there be no issue, then the said lot or parcel of ground, to descend to my grandchildren.'' The court said:

''The gift was to Rachel Means and to her heirs, the natural issue of her body, forever. This limitation at common law created an estate tail. By the provisions of the Act of 1784, chapter 22, section 5, estates tail were abolished; and, in the language of the statute, they shall be deemed and held a fee simple absolute. What is the legal effect of the limitation to the grandchildren, in the event the grantee shall die without issue? If an executory devise be limited to take effect after a dying without heirs, or without issue, or on a failure of issue, the limitation is held void, because the contingency is too remote, as it is not to take effect until there is an indefinite failure of issue. 4 Kent, 271.''

151 Tenn.—38.

In *Skillin* v. *Loyd,* 6 Cold., 563, the devise was "to Julia Frances Spring (wife of my nephew, B. F. Spring), and the heirs of her body, for her own sole and separate use during her natural life, the tract of land she now lives on, containing, by estimation, three hundred and sixty-four acres, more or less." The court said:

"If the words, for 'her own sole and separate use during her natural life,' had been omitted, no difficulty would have existed as to the proper construction of the clause in question.

"The language used is such as would at common law have created an estate tail. 2 Black. Com., 110.

"Under the Act of 1784, chapter 22, section 5, which is carried into the Code at section 2007, a conveyance which would have created an estate tail at common law, becomes a conveyance in fee simple: *Middleton* v. *Smith and Wife,* 1 Cold., 144.

"So, in the present case, Julia Frances Spring, by virtue of the devise to her and the heirs of her body, takes a fee-simple interest, unless the words 'for her own sole and separate use during her natural life,' restrict the conveyance to a less estate. . . .

"We think that Julia Frances Spring takes an estate in fee; and the only effect of the words, 'for her own sole and separate use during her natural life,' is, to exclude, during her life, the marital right of the husband, which would otherwise attach to the land, and that such is their legal effect."

In *Wynne* v. *Wynne,* 9 Heisk., 308, the devise was as follows:

"For the natural love and affection I entertain for my son, Peter D. Wynne, I do, at my death, lend to him, and the lawful issues of his body, a tract of land," etc.

The court said: "The words 'lawful issues of his body,' and 'bodily heirs,' mean the same thing, and the words at common law, would have created an estate tail or conditional fee, which, by the Act of 1784, Code, 2007, is converted into an absolute fee."

In *Bingham* v. *Weller,* 113 Tenn., 77, 81 S. W., 845, 69 L. R. A., 370, 106 Am. St. Rep., 803, the court said: "Now, the deed from Joiner to Carolina I. Weller recites that the property is conveyed to Carolina I. Weller and her 'body' heirs; and under the uniform course of our decisions this vested a fee-simple estate in Carolina I. Weller, and vested no estate in her children."

In *Speight* v. *Askins,* 118 Tenn., 751, 102 S. W., 74, the conveying clause in the deed was "unto the said Addie Askins and the heirs of her body begotten by me." Held that the grantee was vested with a fee-simple title.

In *Scruggs* v. *Mayberry,* 135 Tenn., 586, 188 S. W., 207, the devise was "to him, said Edward and the heirs of his body, and if he should die without heirs, then the land I have given him to go to his sister, Lucinda, and her heirs; that is, the heirs of her body." It was held that Edward took a fee-simple title. The court said:

"A special reason applying in this State in favor of strict construction of these words where realty is involved arises out of our statute above referred to reproduced in Shannon's Code, section 3673, which turns estates tail into fee-simple estates. This statute creates a rule of property and its application ought not to be rendered difficult by a latitudinarian construction of fa-

miliar words, the technical signification of which uniformly creates an estate tail at common law. It ought to be reasonably easy for the examiner of titles to determine when he has before him a case or instance falling under the statute. This is the dictate of public policy for the security of titles. When the effort is made to find in these words a meaning different from that technical signification, nearly always litigation arises. It is true that in some instances public policy has been compelled to give way before what seemed to the court a clear purpose of the testator to use the terms referred to in a nontechnical sense, or as meaning children. This course of construction, however, should not be too much indulged, fore the reasons already stated. Now, turning to the will before us, we see nothing in its sufficiently clear to overturn the true technical meaning of the terms.''

In all of the foregoing cases it could very well be argued that the devisors or grantors, in using the term ''bodily heirs,'' or similar terms, meant ''children;'' but since, by the language employed, estates tail were created, under the statute, they were converted into fee-simple estates.

So that the only question involved is, does the language of the will under consideration constitute an estate tail?

The devise is to ''Mary Josephine Harwell and her bodily heirs.'' No interest of any kind or character is devised to any other person. This strictly conforms to the definition of an estate tail. The limitation over is conditioned upon her dying without heirs, which, under all of the authorities, means an indefinite failure of issue.

Mr. Jarman, in his work on Wills, p. 310, says:

"But it seems that the words, referring to a failure of issue, are not restricted to such a failure at the death, by the mere insertion of the contingency of the issue dying, under age. Thus, if real estate be devised to A and his heirs, with a devise over in case A should die without issue, or such issue should die under the age of twenty-one years, A would be tenant in tail; for it is said that it does not necessarily show that the testator is speaking of a failure of issue at the death of A. He is speaking of a general failure of issue, and then he alludes to the case of there being issue and their dying under the age of twenty-one, which is a limited portion of the contingency, which is explained by the preceding words. But it is not by any means necessary that, because he has used the words, which have very little meaning, therefore, the words 'dying without leaving lawful issue,' which signify a general failure of issue, must signify a leaving of lawful issue living at his death."

Without a close analysis of the decisions of this court, it would seem that conflict exists, for, in some cases, the term "bodily heirs" is construed to mean "children," while in others it is given a strict constructon. But when the cases are thoroughly understood the conflict is more apparent than real.

In the latest decision, *Scruggs* v. *Mayberry,* supra, the correct rule was announced.

We have a great many cases construing the term "bodily heirs" to mean "children." But in most of these cases the devise or grant was to one and his heirs for life with a limitation over. Such a devise did not create an estate tail at common law.

Estates tail are thus defined in 21 Corpus Juris, 931:

"Estates tail are estates of inheritance which, instead of descending to heirs generally, got to the heirs of the donee's body, which means his lawful issue, his children, and through them to his grandchildren in a direct line, so long as his posterity endures in a regular order and course of descent, and upon the extinction of such issue the estate determines."

Mr. Washburn gives the same definition.

It will be noted that it is an estate of inheritance. A life estate is not an estate of inheritance.

In 21 Corpus Juris, 938, it is said:

"A life estate is not an estate of inheritance, but is a freehold, whether for the tenant's own life or for that of another person."

In Tiedeman on Real Property it is said: "But the term (life estates) has been generally extended so as to include all freeholds not of inheritance."

Hence, in such case, the court can give effect to the intention of the testator without doing violence to the Act of 1784. Such devises, however, are controlled by the Acts of 1851, 1852, section 3674 of Shannon's Annotated Code, which is as follows:

"Where a remainder is limited to the heirs or to the heirs of the body of a person, to whom a life estate in the same premises is given, the persons who, on the termination of the life estate, are heirs or heirs of body of such tenant shall take as purchasers, by virtue of the remainder so limited to them."

Some of the cases falling within this class are *Loving* v. *Hunter,* 8 Yerg., 4; *Settle* v. *Settle,* 10 Humph., 474; *Ward* v. *Saunders,* 3 Sneed, 387; *Vaden* v. *Hance,* 1 Head,

300; *Owen* v. *Hancock,* 1 Head, 563; *Alston* v. *Davis,* 2 Head, 266; *Clopton* v. *Clopton,* 2 Heisk., 31; *Williams* v. *Williams,* 10 Heisk., 567; *Balch* v. *Johnson,* 106 Tenn., 250, 61 S. W., 289; *Waller* v. *Martin,* 106 Tenn., 342, 61 S. W., 73, 82 Am. St. Rep., 882.

In *Williams* v. *Williams,* supra, the clause under construction was:

"2d. I will and devise to my grandson Melville Williams, during his life, and then to the heirs of his body by a legal marriage, and in the event of his death without such heirs, then to my residuary legatee and his heirs, $50,000 worth of property," etc.

The court said: "A dying without heirs of the body is construed by the common law like a dying without issue, to be too remote an event upon which to suspend a limitation, the reason being that such a limitation imports a failure or extinction of issue at any period however remote, and to give effect to such limitation would violate the rule against perpetuities. 4 Sneed, 669. But by the Acts of 1851, 1852, chapter, 91, section 1, Code 2009, 'every contingent limitation in . any deed or will made to depend upon the dying of any person without . . . heirs of the body, . . . shall be a limitation to take effect when such person dies without heirs . . . living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise expressly and plainly declared in the face of the deed or will creating it.' Nothing in the face of this will expressly declares that this limitation is to take effect on an indefinite failure of issue. We therefore think that the limitation to the residuary legatee is a valid limitation in this case. The old Act of

1784, Code 2004, providing in effect that ·a person seized of an estate in general or special tail shall be held and deemed to be seized in fee, has no application in this ·case, for the reason that the complainant does not take an estate in tail under this limitation, but only an estate for life.''

There is another line of cases holding that ''heirs of the body'' will be construed ''children'' where the devise is to the first taker absolutely, followed by a limitation over in case he dies ''without issue,'' etc. *Petty* v. *Moore,* 5 Sneed, 126; *Cowan, McClung & Co. v. Wells,* 5 Lea, 682; *Armstrong* v. *Douglass,* 89 Tenn., 219, 14 S. W., 604, 10 L. R. A., 85; *Franklin* v. *Franklin,* 91 Tenn., 124, 18 S. W., 61.

In these cases the devises were not to the first taker *and his bodily heirs* (the italics are ours), and hence did not create estates tail.

Finally, there is a class of cases in which the term ''bodily heirs'' is construed to mean ''children'' where, from the context, the court can clearly see that the testator did not use the term in its strict legal sense.

The words'''bodily heirs'' have been construed to mean ''children'' in the construction of the deeds in *Read* v. *Fite,* 8 Humph., 328; *Grimes* v. *Orrand,* 2 Heisk., 298, and *Arrants* v. *Crumley* (Tenn. Ch. App.), 48 S. W., 342. But in each of these cases the deeds conveyed lands *in præsenti* to the heirs of a living person, and the court properly held that a person in life could have no heirs, and therefore the word ''heirs'' was not used in its technical or usual sense, but must be construed as ''children.'' It will be noted that the conveyances in those cases did not create an estate tail.

In *Smith* v. *Smith,* 108 Tenn., 21, 64 S. W., 483, the devise was "to my son, Samuel F. Smith, and his heirs, equal shares in my home farm." The son had several children living at the death of testator. The court said it was impossible for the son to share equally with his heirs, because he had no heirs until his death, and that the testator evidently meant children.

In *Boyd* v. *Robinson,* 93 Tenn., 1, 23 S. W., 72, the item of the will in controversy read: "I give all of my estate of every kind, real and personal, and wherever situated, to my brother, John B. Robinson, and his lawful heirs. If he dies without such heirs, then I give everything to my sister Leila Boyd, the personalty to her absolutely and the realty to her for life, with remainder over to her children."

The court held that the words "lawful heirs" meant "children," and said:

"Looking at this entire will and all the circumstances surrounding the testator, it appears that at the time W. H. Robinson made his will, his brother, John B. Robinson, and his sister, Mrs. Boyd, were his only surviving brothers and sisters and next of kin. He was attempting to provide for the contingency of his brother dying, leaving only his sister, Mrs. Boyd, surviving. He evidently contemplated that his sister, Mrs. Boyd, might survive his brother, John B.; and if we construe the word to mean children, then it is plain he intended Mrs. Boyd to take the property if his brother died without children. But, as Mrs. Boyd was his heir, we have him providing for her to take as his sister only in the event she was dead, as otherwise the brother would not die without heirs. In other words, if Mrs. Boyd were dead, so

that she could not be heir, then she was to take under the designation of sister.

"We think it very clear that W. H. Robinson, by his will, intended his property to go to his sister, Mrs. Boyd, in the event his brother, Jno. B. Robinson, died without children, and, under that will, she takes all the property accumulated by W. H. Robinson in his lifetime, and not disposed of by him, nor since used in paying his debts, as well as his one-half the trust estate, and his one-half of the estate of his father, Jno. B. Robinson, Sr., if not disposed of by him in his lifetime, or paid upon his debts, as was held by the chancellor."

While, for the reasons stated, this case may be treated as an exception and not an authority against the rule invoked in the instant cause, we are nevertheless of the opinion that it is out of line with the other decisions of this court cited hereinabove. The devise was to John B. Robinson and his lawful heirs, and then if he died without such heirs, it was to go over. This falls strictly within the definition of an estate tail, and is in direct conflict with the later case of *Scruggs* v. *Mayberry,* supra.

After reviewing our authorities, we are unable to find a single decisions holding that the term "bodily heirs" will be construed "children," where the devise is to one and his bodily heirs, with a limitation over in case he dies without bodily heirs, unless there is some statement in the context which plainly shows that the testator could not have meant to use the term "bodily heirs" in a strict sense. And it is doubtful even then if that is sufficient to justify a departure from the statute, which this court, in its latest utterance, said should be departed from reluctantly.

Harwell v. Harwell.

We hold, therefore, that Mary Josephine Harwell took the property devised to her by her father under the third item of his will in fee simple, and that the complainant, Patta Turner Harwell, took a fee-simple title to the property devised to her under the fourth item of the will.

The decree of the court of civil appeals will be reversed, and a decree will be entered here in accordance with this opinion.

The complainants and the sureties on their appeal bond will pay all the costs accrued in the cause.