Nellie Gupton HARRIS, Appellant,

v.

Jawana Gupton BITTIKOFER, Appellee.

Supreme Court of Tennessee.

Aug. 9, 1976.

Charles Watson Cross, Nashville, for appellee.

## OPINION

HENRY, Justice.

The question in this suit for the construction of a will is the nature or quantum of the estate acquired by Nellie Gupton Harris in certain property devised by her mother. The Chancellor, relying upon *Whitfield v. Butler*, 30 Tenn.App. 221, 204 S.W.2d 537 (1947), held that the will vested in the plaintiff "a life estate with remainder to the defendant . . . or her heirs".

While we are not in full accord with the learned Chancellor's reasoning and do not fully concur in the precise results he reached, we are in agreement with his conclusion that Nellie Gupton Harris took a life estate under her mother's will.

### I.

The pertinent provision of the will of Angie Heflin Gupton reads as follows:

I . . . devise to my daughter, Nellie Alberta Gupton Harris, . . . all of the property of every character, kind and species, including real estate . . of which I may die possessed. . . . To have and hold the same *during her natural life, and her bodily heirs, if any, forever*; provided however, that in case said Nellie Alberta Gupton Harris, *should die leaving no bodily issue*, and her husband, James V. Harris, should survive her, then *all I have bequeathed to her, shall revert to my granddaughter Jawana Sue Gupton or her heirs.* (Emphasis supplied)

The case is before us on the technical record only and the pleadings are meager. Nellie Gupton Harris is alive; we infer she has no bodily issue from the fact that she is the sole plaintiff and the defendants are Jawana and her "unknown and unborn heirs". The record is silent as to Nellie's husband. The will was dated March 5, 1955. Jawana is an adult. Default judgment was taken against her so that we do

Walter S. Clark, Jr., Nashville, for appellant.

not have the benefit of her responsive pleading. The pleading of the Guardian ad litem sheds no light on the circumstances of the parties. The result is that this will must be construed from its language and without resort to any extrinsic evidence.

The appellant (Nellie) insists that the will should be construed to create an estate tail with the result that § 64–102, T.C.A., abolishing estates tail, comes into play and operates to convert the devise to a fee simple estate.

The appellees, the unknown and unborn children of Jawana, insist that Nellie received a life estate and Jawana, and her heirs, received a remainder in fee.

## II.

As a prelude to an orderly discussion of the questions presented by this controversy we examine and analyze the pertinent provisions of the will of Angie Heflin Gupton.

■ The opening sentence of the paragraph under consideration may be abridged and restated as follows:

I give to my daughter, Nellie, all of my property.

It will be noted that in the original form, and as restated, this sentence contains no emphatic or unequivocal words such as "in fee simple", or "absolutely" or "absolutely and in fee simple forever", or any other equivalent wordage from which a clear and unambiguous intent to pass a fee simple title may be inferred. Under § 64–501, T.C.A., and universal decisional law, this language, standing alone, was sufficient to convey a fee simple title.

But, it does not stand alone.

The ensuing sentence, couched in the form of the habendum clause of a deed, completely alters its meaning and significance. These two sentences might be combined into a single sentence, which we abridge and restate as follows:

I give to my daughter, Nellie, all of my property, *during her natural life* and upon her death to her bodily heirs, if any, forever; provided, if Nellie should die leaving no bodily issue, and her husband, James V. Harris should survive her, all such property shall pass[1] to my granddaughter, Jawana, or her heirs. (Emphasis supplied).

It should be noted at the very outset that the only interest actually identified in the will is a life estate. Any other estate must arise by construction of law, based upon an imputed intent on the part of the testator. The clause, "during her natural life" is of critical and controlling significance.

## III.

We first address the insistence of the appellant that Nellie took a fee tail estate convertible under § 64–102, T.C.A. to a fee simple interest.

■ To adopt this approach, it is necessary to hold that a fee tail estate may come into being under a conveyance specifically and initially limited to, a life estate. This we are not prepared to hold. Such a construction would be contrary to the massive weight of the decisional law of Tennessee.

Section 64–102, T.C.A. is a codification of the Tennessee statute, designed to abolish estates tail, and reads as follows:

64–102. *Estates tail abolished.*—Any person seized or possessed of an estate in general or special tail, whether by purchase or descent, shall be held and deemed to be seized and possessed of the same in fee simple, fully and absolutely, without any condition or limitation whatsoever, to him, his heirs and assigns, forever, and shall have full power and authority to sell or devise the same as he thinks proper; and such estate shall descend under the same rules as other estates in fee simple.

While there is authority contra, as will be pointed out, the greater weight of the bet-

1. The word "revert" in the will obviously is intended to mean "pass to", "go to" or words of like import.

ter reasoned cases compel the conclusion that this statute has no application where the first taker takes only a life estate.

The early case of *Kirk v. Furgerson*, 46 Tenn. 479 (1869), stands for the proposition that a conveyance "to A and his heirs", coupled with a gift over in default of issue, creates an estate tail convertible under the statute (now § 64–102) to a fee simple. This continues to be the law where the instrument shows facially that an *absolute* estate was transmitted to the first taker.

In *Skillin v. Loyd*, 46 Tenn. 563 (1869), relied upon by the appellant and supportive of her position, where the devise was to Julia Frances Spring, "and the heirs of her body, for her own sole and separate use during her natural life", the Court held that this language created an estate tail converted into a fee simple. This case is out of harmony with later cases and is one of the few cases we find wherein a devise of a life estate, accompanied by fee tail language, was held sufficient to create a fee tail estate.

The earliest case cited to us by appellee is *Williams v. Williams*, 57 Tenn. 566 (1873) which we discuss later in another context. (See Sec. IV, infra). There the language of the devise was:

I will and devise to my grandson Melville Williams, *during his life*, and then to the heirs of his body . . . and in the event of his death without such heirs, then to my residuary legatee and his heirs . . . . (Emphasis supplied). 57 Tenn. at 567.

In legal effect this language is precisely the same as that contained in the case at bar. Applying the statute (§ 64–103) abrogating the rule in Shelley's Case, the Court held that Melville Williams took a life estate and his heirs took a contingent remainder.

Appellant places strong reliance upon *Meacham v. Graham*, 98 Tenn. 190, 39 S.W. 12 (1897). There the pertinent portion of the will, after the creation of a trust (all money), read:

The legacy to be held in trust for my said daughter, subject to the foregoing limitations and restrictions, *for and during her natural life*, and, in the event of her death without living children, her share of the estate to go to my sons (naming them) equally, and, in case either of them shall be dead, leaving living children, then to their child or children. (Emphasis supplied). 98 Tenn. at 195, 39 S.W. at 14.

Actually there were no limitations or restrictions on her spending the money while unmarried, and "[i]n the meantime the money is in her hands to use without limitation". 98 Tenn. at 202, 39 S.W. at 14.

The Court held (1) that the term "during her natural life", measured "the duration of the trustee's, and not the duration of the daughter's estate", (2) that there was no valid executory devise since the first taker could defeat the limitation over and (3) that the daughter, upon the death of her father, took an absolute estate. It is evident that the Court's opinion was based, in substantial part, on the factual situation and the testator's intent.

We consider next two cases decided by the old Court of Chancery Appeals, that are cited by both sides in support of their respective insistences. The first of these is *Stratton v. McKinnie*, 62 S.W. 636 (Tenn. Ch.App.1900). After devises of certain properties to children and grandchildren, including an unqualified devise of a lot on Spruce Street to Mary McKinnie Hughes, the will provides:

The property herein devised to my several children is to remain their own *during their natural lives*, and to descend to their *bodily heirs*, if any . . . . If any of my said children or grandchild B. McKinnie Stratton *should die without bodily heirs*, then that portion . . . shall be equally divided among the living children . . . . (Emphasis supplied). 62 S.W. at 637.

In a most excellent opinion by Judge M. M. Neil, later Chief Justice of this Court, the Court recognized the applicability of Shannon's Code Section 3674 (now § 64–103,

T.C.A.), abolishing the Rule in Shelley's Case, and the rule of construction that a subsequent clause must control a prior clause in a will, and held:

> [W]e think it clear that the absolute estate apparently given . . . in the second item of the will must be cut down to a life estate, with remainder to her bodily heirs. . . . It results that . . . there was given to Mary McKinnie Hughes a life estate in the lot on Spruce Street, and with remainder to such persons as shall be her bodily heirs at the expiration of that life estate. 62 S.W. at 640.

Secondly, reliance is placed by the respective parties on *Cook v. Collier*, 62 S.W. 658 (Tenn.Ch.App.1901), another case wherein Judge Neil wrote for the Court. To the extent here pertinent the will provision was as follows:

> I give and bequeath to Columbus C. Collier the sum of $10,000 . . . *to have and to hold during [his] natural life* and at [his] death to [his] children, or, in the event [he] has no children, to the surviving brothers above mentioned. (Emphasis supplied). 62 S.W. at 659.

It will be noted that this language is somewhat analogous to that in the case under consideration. The Court held that C. C. Collier took the money for life, and at his death without children, a surviving brother took the remainder.

*Scruggs v. Mayberry*, 135 Tenn. 586, 188 S.W. 207 (1915), wherein Chief Justice M. M. Neil wrote for the Court, involved a devise after a title absolute. The precise language was

> [To] Edward and the heirs of his body, and if he should die without heirs, then the land I have given him to go to his sister, Lucinda, and her heirs. 135 Tenn. at 591, 188 S.W. at 208.

The Court correctly held that the devise to Edward was in fee since such a devise operated to create an estate tail convertible to an estate in fee simple. But, again, the Court was dealing with an *absolute* interest as opposed to a life estate.

Another case relied upon by appellant is *Anderson v. Lucas*, 140 Tenn. 336, 204 S.W. 989 (1918). There property was devised to trustees for the use of a daughter and

> [after her death] the whole legacy to be divided among her children, if any, *and if she should die without lawful issue*, . . . to be equally divided amongst [other daughters]. (Emphasis supplied). 140 Tenn. at 342, 204 S.W. at 992.

The Court held that the clause, "and if she should die without lawful issue" was sufficient to create an estate tail, at common law, in the daughter. The Court quoted with approval from an English case quoted in *Nott v. Fitzgibbon*, 107 Tenn. 54, 58, 64 S.W. 26, 27 (1901), as follows:

> That it was perfectly manifest that the testator did not intend the estate to go over so long as any issue of the first taker were in existence; and I consider it . . . to be a settled point that, whether an estate be given in fee or for life, or generally, without any particular limit as to duration if it be followed by a devise over in case of the devisee dying without issue, the devisee will take an estate tail. 140 Tenn. at 350, 204 S.W. at 993.

Appellant relies heavily upon *Harwell v. Harwell*, 151 Tenn. 587, 271 S.W. 353 (1924) wherein the language of the devise was as follows:

> I give and bequeath unto my daughter, Mary Josephine Harwell, *and her bodily heirs, if she should die leaving no heir* or if she should leave an heir or heirs, and they should die before they come to their majority of their years, then said land revert back to my estate . . . . (Emphasis supplied). 151 Tenn. at 589, 271 S.W. at 353.

In legal import, except for the life estate, this language is analogous to that of the case at bar. The Court agreed that it was the intention of the testator to create a life estate in the daughter; but, admittedly disregarded the clear intent of the testator and held that under the statute (now § 64–102, T.C.A.) the daughter took an estate tail convertible to a fee simple. The basis of

this holding was that the statute abolishing estates in fee tail and converting them to fee simple was not a rule of intention or construction but a rule of property.[2]

In *Walker v. Wynn*, 4 Tenn.App. 572 (1927), the granting clause conveyed to

Nancy M. Walker, for and during her life and after her death to the heirs of her body. 4 Tenn.App. at 573.

The habendum was to

Nancy M. Walker, the heirs of her body or in case of no heirs of her body at her death, to my own living children forever. . . . *Ibid.*

The only issue was whether Nancy took a life estate or held title in fee simple. The Court, after commenting on the *Meacham* line of cases, said:

[T]hey are all cases in which, in the first instance an absolute estate was given to the devisee or legatee. No case is referred to in which this rule has been applied where a plain life estate was given. On the contrary, in two of this group of cases [*Meacham* and another] the opinion of the court is clearly indicated that the doctrine does not apply to a life estate but only where an absolute estate is given in the first instance. *Ibid.* at 574.

The Court, relying largely on *Williams, supra*, held that Nancy took a life estate.

It is appropriate that at this point we note the case of *Whitfield v. Butler*, 30 Tenn.App. 221, 204 S.W.2d 537 (1947), cited by the Chancellor and primarily relied upon by the appellees.

The writer of this opinion has had a detailed familiarity with this celebrated Giles County case since its very inception and can say, with demonstrable authority, that no court has ever "construed" the will of Cope Whitfield; the courts could only attempt to "unravel" this unique document.[3] With utmost deference to the Chancellor and to counsel, this case stands for nothing except

the proposition that it is abject folly for a layman to attempt to write his own will.

Reduced to the bare essentials, by the first item, the testator gave all his property to his wife and children, and expressed the desire that his wife control it with the help of a son, until all the children became of age. Then he added the proviso that if she remarried before the children became of age, the son was to take charge of it and "the man she marrys be forever barred from having anything to do with it forever." 30 Tenn.App. at 223, 204 S.W.2d at 538.

By the fourth item he provided:

And at the death of my wife, her part of the estate comes back to my said children and that at the death of my children their property goes to their heirs, if they have no children of their own I want it to stay in the Whitfield family. *Ibid.*

After signing his name he apparently felt that he had not sufficiently entailed his property, so he started over, and provided:

I also desire that when my children become of age that all of the children with mother . . . divide the property equally . . ., as, I want it, each ones part so as they can not run through with it and want it to go from them to their heirs. *Ibid.*

The Court held that the widow and children took life estates with remainder over to the grandchildren.

We reject *Skillin v. Loyd* and *Anderson v. Lucas, supra*, as being out of harmony with the prevailing view as expressed in the other cases discussed in this section.

We hold that § 64–102, T.C.A. has no application to those cases wherein the first taker is devised a life estate. Ensuing sections will further clarify this holding.

## IV.

■ Relevant to the cases discussed in the preceding sections and particularly

---

2. See Sec. IV, infra, for a further commentary on this case.

3. By Item 2 he disposed of all his debts by making them "null and void" and asserting that "my estate not bound for anything of that kind."

bearing upon the construction to be given to the clause, "if [Nellie] should die leaving no bodily issue", is the rule of *Meacham v. Graham, supra,* sometimes designated as the rule of "substitutional construction", to the effect that if there is an absolute power of disposition or an immediate gift to a devisee followed by a limitation over in the event of death of the first taker without issue, the limitation over will take effect only in the event of the death of the devisee before the death of the testator, "unless a contrary *intention* clearly appear[s] from other provisions." 98 Tenn. at 208, 39 S.W. at 15. But it is important to note that this is but a rule of *construction* and *not of property, Shannon v. Union Planters Bank,* 537 S.W.2d 919 (Tenn.1976), notwithstanding contrary language in some of the older cases.

Our courts have addressed themselves to the definite failure vis a vis indefinite failure of issue in numerous and exhaustive opinions and with results which have not always been consistent.

The general rule of *Meacham* has been followed by numerous cases [4] and continues to be a valid rule of law in this jurisdiction. However, our courts have not hesitated to apply exceptions to the general rule.

In *Cook v. Collier,* 62 S.W. 658 (Tenn.Ch. App.1901), the Court made it clear that the rule would not apply where the "limitation over were to take effect on the termination of a life estate." 62 S.W. at 660. To the same effect is *Meek v. Trotter,* 133 Tenn. 145, 180 S.W. 176 (1915), pointing out that *Meacham,* and its progeny all "dealt with immediate devisees or gifts to the one declared to be, under the rule, vested with title absolute." 133 Tenn. at 151.

In *Harwell v. Harwell, supra,* the thrust of the Court's holding in this regard is that the use of the words, dying without heirs, imports an indefinite failure of issue, i. e., death at any time. Hence the Court's hold-

ing that an estate tail was created by the conveyance involved in that case.

In *Walker v. Wynn, supra,* the Court declined to follow the *Meacham* line of cases, holding that "[T]hey are all cases in which, in the first instance an absolute estate was given. . . ." 4 Tenn.App. at 574.

*Eckhardt v. Phillips,* 176 Tenn. 34, 137 S.W.2d 301 (1940), contains an elaborate discussion of future interests. In holding that this is a rule of construction and not a rule of property, and that under the facts presented, the limitation over was to take effect upon the death of the first taker without issue irrespective of when death might occur, the Court said:

> [R]ules of construction do not vary with the character of parties litigant, nor do they permit examiners of titles to isolate such words as "if he die with or without issue", or words of like legal import, and to *attribute to them the unerring significance of the death of the first legatee or devisee before the testator.* (Emphasis supplied). 176 Tenn. at 44–45, 137 S.W.2d at 305.

This Court in *Griffin et al. v. Griffin et al.,* 183 Tenn. 693, 195 S.W.2d 5 (1946), recognized the rule of *Meacham* as a rule of construction and held that it has no application where "the first taker was given only a life estate." 183 Tenn. at 700, 195 S.W.2d at 8.

In *Vickers v. Vickers,* 205 Tenn. 86, 325 S.W.2d 544 (1959), placing first emphasis on the intention of the testator, the Court construed the clause of a limitation over, "should either die without issue", to mean death at anytime and not just during the lifetime of the testator.

This particular phase of this controversy is eloquently described by Professor Trautman, writing in Vol. 13, Vanderbilt Law Review (1960), page 1113–14 as follows:

> If the testator's will gives "to A, and if he die without issue, to B," should there

4. See e. g., *Vaughn v. Cator,* 85 Tenn. 302, 2 S.W. 262 (1886); *Stratton v. McKinnie,* 62 S.W. 636 (Tenn.Ch.App.1900); *Katzenberger v. Weaver,* 110 Tenn. 620, 75 S.W. 937 (1903);

*Frank v. Frank,* 120 Tenn. 569, 111 S.W. 1119 (1908), treating it as a rule of property; *Scruggs v. Mayberry,* 135 Tenn. 586, 188 S.W. 207 (1915).

be a further narrowing of its interpretation so that it will mean that the gift to B is to become effective only if A dies without issue during the life of the testator? This is sometimes described as a substitutional construction because it does not create a future interest in B; it substitutes an absolute interest to B for a similar interest which A would have received had he survived the testator. This construction will make the title even more readily merchantable because either A or B will have an indefeasible interest on the testator's death. On the other hand, did the testator not intend that B's gift would become effective if A died without leaving descendants, whether it happened before the testator's death or after? *In most cases the latter would seem to be the normal interpretation of the testator's intention,* and it would seem that the *substitutional construction would be adopted only in those cases where there is rather specific evidence tending to show such an intention.* Unfortunately, in Tennessee as well as other jurisdictions there are a considerable number of cases adopting substitutional construction and a considerable number adopting the straight definite failure of issue construction; and, more unfortunately, in most cases these different interpretations of the testator's possible intention are handled by the courts as if they are competing propositions of law, or a rule of law, and an exception to it, rather than what they really are—an effort by the courts to determine from the evidence what the testator probably intended with respect to each family situation. (Emphasis supplied).

On the matter of substitutional construction and intention, see also *Nichols v. Masterson,* 186 Tenn. 38, 208 S.W.2d 332 (1948); on intention, see *Patterson v. Alexander,* 509 S.W.2d 834 (Tenn.1974), and *Martin v. Taylor,* 521 S.W.2d 581 (Tenn.1975).

In *Gregory v. Alexander,* 51 Tenn.App. 307, 367 S.W.2d 292 (1962), the Court held that a deed, reserving a life estate, and providing that at grantor's death the land was to go to Rosalie Cox and her heirs, if any, and if she dies without bodily heirs, it is to revert to grantor's heirs, was operative to give grantee a life estate with remainder to her bodily heirs, to be ascertained at the time of her death.

There remain for consideration three opinions authored by the present Chief Justice of this Court.

The first of these, *Lones v. Winzer,* 486 S.W.2d 758 (Tenn.App.1971) was written by Chief Justice Cooper while Presiding Judge of the Court of Appeals for the Eastern Section.

In that case the will, after a straight-out devise to the testator's son, Alvin Lones, provided:

In the event my son, Alvin Lones, should die without having married or should die without leaving children of his own, then I will and devise the said farm to my two daughters. . . . 486 S.W.2d at 759.

It should be noted that there was no language in this will indicating the creation of a life estate, or as phrased by Justice Cooper:

On considering the will in its entirety, we find ourselves in agreement with the Chancellor that there is no provision in the will showing an intent on the part of the testatrix to devise less than a fee simple . . . . [T]he testatrix intended the "devise over" provided in the second paragraph to come into play on the death of Alvin Lones during the lifetime of the testatrix . . . . *Ibid.* at 760.

The second case, *Martin v. Taylor,* 521 S.W.2d 581 (Tenn.1975), was written by Justice Cooper after becoming a member of this Court and was concurred in by all present members.

After an exceptionally strong statement on the vitality of the testator's intent, Justice Cooper used, and quoted, language which puts this present problem in precise perspective:

Further, this court is committed to the rule that in the absence of a contrary intention clearly indicated in the will and

codicil, where there is an immediate gift to A, and a gift over in case of A's death without issue, the gift over will take effect only in event of A's death before the testator. *Nichols v. Masterson,* 186 Tenn. 38, 208 S.W.2d 332 (1948); *Templeton v. Stong,* 182 Tenn. 591, 188 S.W.2d 560 (1945); *Eckhardt v. Phillips,* 176 Tenn. 34, 137 S.W.2d 301 (1940); *Meacham v. Graham,* 98 Tenn. 190, 39 S.W. 12 (1897). "There is still another rule equally as well established . . ., and that is, where the disposition of the property which is devised is preceded by a prior estate for life or years, the death without issue refers to a death occurring during the period of the intervening estate, such as before the death of the life tenant, unless there are words in the will which show that the testator intended to refer to a death occurring before his decease, or at a later date than the termination of the particular estate." *Carr v. Carr,* 8 Tenn. C.C.A. 406, 410 (1918). See also *McCord v. Ransom,* 185 Tenn. 677, 207 S.W.2d 581 (1948); *Templeton v. Stong,* 182 Tenn. 591, 188 S.W.2d 560 (1945); *Eckhardt v. Phillips,* 176 Tenn. 34, 137 S.W.2d 301 (1940). 521 S.W.2d at 584.

Finally, we rest our holding upon a reiteration of the conclusions announced by this Court on 24 May 1976, in the case of *Shannon v. Union Planters National Bank, supra,* involving a will creating a life estate with survivorship provisions.

After recognizing the rule of *Meacham* as followed in ensuing cases, and noting its continuing validity, the Court said:

The present case, however, is distinguishable from all the above-cited cases in which the rule was applied to defeat the limitation over. In those cases the first-named devisee was granted a fee simple or other absolute interest in the property being devised. . . . *When the limitation over is dependent upon the termination of less than an absolute estate, the rule of Meacham v. Graham does not*

*apply.* (Emphasis supplied). 537 S.W.2d at 922.

This is precisely the situation in the case at bar.

## V.

We devote this section to the Rule in *Shelley's* case, and the Tennessee statute in derogation thereof.

We look to Simes, Law of Future Interests (1966), p. 46 for an accurate definition.

If a life estate in land is conveyed or devised to A, and by the same conveyance or devise, a remainder in the same land is limited, mediately or immediately, to the heirs of A, or to the heirs of A's body, and the life estate and remainder are of the same quality, then A has a remainder in fee simple or in fee tail.

To bring a conveyance or devise under the Rule it must contemplate a freehold interest,[5] but not a fee simple since a fee simple may not be followed by a remainder. This is because, under the doctrine of estates, a fee simple represents the totality of the ownership. There must be a freehold in the ancestor. The remainder must be limited to the heirs or heirs of the body of the person to whom the life estate is given. The remainder and the life estate must be created by the same conveyance or devise, and both must be of the same quality, i. e. both legal or both equitable interests. Law of Future Interests, pp. 48–51.

It is important to bear in mind that the Rule only operated on the remainder given to the heirs of the ancestor, but does not disturb his estate. As Moynihan puts it "Thus, in the simple case of A conveying to B for life, then to the heirs of B, the Rule leaves undisturbed the life estate given B but converts what would be a contingent remainder in B's heirs into a vested remainder in B himself." See Moynihan, Introduction to Real Property, (1962), p. 142.

The devise, in the instant suit would have created, at common law, a fee simple estate

---

5. A life estate is a freehold estate not of inheritance. *Harwell v. Harwell,* 151 Tenn. 587, 271 S.W. 353.

in Nellie Harris, under the Rule in *Shelley's* case. But this Rule no longer prevails in Tennessee, and has not since 1851. By § 64–103, T.C.A., it is provided:

Where a remainder is limited to the heirs or to the heirs of the body of a person, to whom a life estate in the same premises is given, the persons who, on the termination of the life estate, are heirs or heirs of body of such tenant, shall take as purchasers, by virtue of the remainder so limited to them.

Broadly speaking, title to real estate may be acquired either by descent or by purchase. Title by descent is based on inheritance as an heir, or on escheat. Every other acquisition is by purchase, whether it be by gift, conveyance or devise. Words of limitation mark or define the quantum of the estate; whereas words of purchase are related to the grantee. "Heirs" is a word of limitation. For example, when A conveys "to B for life", the words "to B" are words of purchase; the words "for life" are words of limitation.[6]

It would seem evident that under the statute, Nellie would take a present possessory life estate and her children or heirs would take a future interest which ripens into a present possessory estate in fee upon the culmination of the prior particular estate by the death of Nellie, survived by issue.

We analyze the Tennessee cases from this perspective.

We think this case is controlled by a line of cases starting with *Williams v. Williams,* 57 Tenn. 566 (1873), which, according to our research, is the first pertinent reported Tennessee case after the adoption of the statute abolishing the Rule in *Shelley's* case. There the language of the devise (see Section III) was, in legal effect, precisely the same as that contained in the case at bar.

The Court held (1) that [t]he limitation of this property . . . to Melville Wil-

liams for life, and then to the heirs of his body, falls precisely within the terms of the celebrated canon of property known as "the rule in *Shelley's* case" (57 Tenn. at 567), (2) that under Code Sec. 2008, Code of 1858, (now § 64–103, T.C.A.) Melville Williams took a life estate; (3) that his heirs took a contingent remainder, and (4) that Code Sec. 2004, Code of 1858, (the context indicates that the Court intended 2007, now § 64–102, T.C.A.) had no application.

As a predicate for the remainder of this section we deem it appropriate to quote from this opinion, the following apt language:

When under the rule it is declared that the words heirs are words of limitation of the estate, it is meant of course that those words point out the line of succession in which the estate is to go, and when it is said they are not words of purchase, it results that they are words of descent, as descent and purchase are the only two modes of acquiring real estate. Hence it followed that although the estate of the first taker was in form of a life estate, the rule vests the entire estate imported by the limitation in him, as no one could take as heir of another in whom there was no descendible estate. Therefore, when the statute declares that those who are entitled, on the termination of the life estate, shall take as purchasers, it uses the most apt words to abolish the "rule in *Shelley* case"; and, inasmuch as the heirs do not take by descent but by virtue of the remainder limited to them, it follows that by this enactment of the Legislature the first taker is deprived of any estate in the inheritance, and his interest is restricted in fact to what, under the rule, it was in form, viz: a particular estate for life. By applying these rules of the statute to the limitations in this will, it is seen that the complainant has but a life estate in the property disposed of by the second item. The statute further declares that those persons who

---

6. Simes, Law of Future Interests (Second Ed. 1966) pp. 43–44; see also Moynihan, Introduction to Real Property (1962) p. 31; Tiedman,

The American Law of Real Property (Third Ed. 1906) p. 667.

are heirs, or heirs of the body, at the termination of the life estate shall take. It results therefore that the remainder in this case is a contingent remainder, inasmuch as it is uncertain who the heirs of the body of Melville Williams will be when his death occurs; but it is very plain that on his death the estate will vest in those persons who at that time answer the description of heirs of his body, whether born now or hereafter. 56 Tenn. at 568–69.

There is an obvious interplay and a seeming inconsistency between § 64–102, T.C.A. abolishing estates tail and § 64–103 abolishing the Rule in *Shelley's* case; however, the inconsistency is more apparent than actual. If the criteria hereinabove set out are applicable, we have a Rule in *Shelley's* case situation and § 64–103 comes into play.

The Court in *Williams* did not discuss the relationship between these two statutes. It simply stated:

> The old Act of 1784, Code 2004, providing in effect that a person seized of an estate in general or special tail shall be held and deemed to be seized in fee, has no application in this case, for the reason that the complainant *does not take an estate in tail under this limitation, but only an estate for life.* (Emphasis supplied) [7]

This will came before the Court again in *Williams v. Williams,* 62 Tenn. 55 (1873), and the same result was reached. It was again before the Court with the same result in *Campbell v. Lewisburg & N. R. R. Co.,* 160 Tenn. 477, 26 S.W.2d 141 (1930).

In *Delk v. Williams,* 10 Tenn.App. 246 (1929), the Court held that where a deed conveyed real estate to a grantee "during her natural life and at her death to go to her bodily heirs", the statute was applicable and a life estate is vested in the first taker and the remainder, at her death goes to her bodily heirs.

The late Justice Swiggart, writing for the Court in *Savings Bank & Trust Co. v. Bed-* *ford,* 161 Tenn. 187, 30 S.W.2d 227 (1930), analyzed a will wherein the pertinent language was as follows:

> That Julian T. Bedford shall have the West half for life and at his death the remainder shall go to the heirs of his body; . . . . 161 Tenn. at 191, 30 S.W.2d at 228.

After quoting with approval from *Williams v. Williams, supra,* Justice Swiggart, with great clarity and insight, wrote:

> The devise to Julian T. Bedford expressly limits his estate *to the period of his life.* If he is given more, it is by virtue of the words of the devise: "and at his death the remainder shall go to the heirs of his body." Before the statute, these words were words of limitation or descent, and directed that the fee should "descend" from the life tenant to the heirs of his body. Since the fee could not "descent" from him who had it not, the words of descent or limitation were held to vest the fee in him who was, in form, only a life tenant. But the statute stripped these words of descent or limitation of their previously possessed characteristic, when used in connection with the creation of a life estate, and recreated them as words of purchase, no longer to convey the meaning of descent or inheritance. The statute therefore destroyed the only premise upon which the "rule in *Shelley's* case" could stand; and hence the ruling in *Williams v. Williams, supra,* that the statute "uses the most apt words to abolish the rule in *Shelley's* case." (Emphasis supplied). *Ibid* at 195, 30 S.W.2d at 229.

A case of substantial significance bearing upon this issue is *Guy v. Culberson,* 164 Tenn. 509, 51 S.W.2d 500 (1932), wherein Justice Cook wrote for the Court. The deed was

> to David Guy to be occupied by him and family as a home *during his natural life* and *at his death to his bodily heirs* . . .

7. The context indicates that the Court intended Sec. 2007, Code of 1858, (now § 64–102, T.C.A.).

To have and to hold to the said David Guy, *his natural life and heirs forever.* (Emphasis supplied). 164 Tenn. at 511, 51 S.W.2d at 501.

Relying upon § 64–103, T.C.A., the Court held that Guy took a life estate with remainder over to bodily heirs living at the time of his death.

A more significant case is *Butler v. Parker,* 200 Tenn. 603, 293 S.W.2d 174 (1956), wherein Justice Burnett tacitly recognized the conflict between § 64–102 and § 64–103, T.C.A. This suit involved title to property conveyed to "Ralph Parker and at his death to his bodily heirs." 200 Tenn. at 605, 293 S.W.2d at 175.

The interplay between these Code sections is discussed in these words:

We think unquestionably if the deed now under consideration said "to Ralph Parker and the heirs of his body" that it would have created, under the statute last above referred to, a fee simple estate in *Parker.* The language used in the conveyance herein though is different. The language here used is equivalent to saying "to Ralph Parker for life and then to the heirs of his body." Under a deed with language of that import at common law it would have vested a conditional fee in the grantee and under the statute *De Donis* would have vested a fee tail estate in him by reason of the application of the rule in *Shelley's* case. This rule was abolished by Sec. 64–103, T.C.A., which is a codification of the Public Acts of 1851–52, Chapter 91, Sec. 1. It seems to us that as a result of the abolishing of the rule in *Shelley's* case, Code Section last above referred to, Sec. 64–103, T.C.A., the conveyance today would vest in the grantee a life estate with a contingent remainder in his heirs. 200 Tenn. at 609–10, 293 S.W.2d at 176.

It will be borne in mind that the language in the case *sub judice* was to Nellie Gupton Harris "during her natural life, and her bodily heirs, if any, forever . . ." The similarity is evident.

Further, the *Butler* Court said:

Clearly under this statutory provision the heirs or heirs of the body of the grantee which before would have only enlarged the life estate of the parent into a fee has the result of limiting the interest of the grantee in the property devised to a life estate with a contingent remainder in fee to those who at the death of the life tenant will answer the description of the heirs of his body. *Campbell v. Lewisburg & N. R. Co.,* 160 Tenn. 477, 487, 26 S.W.2d 141. And a more recent case sustains this same position, that is the case of *Guy v. Culberson,* opinion of which was prepared by the late Mr. Justice Cook and is found in 164 Tenn. 509, 51 S.W.2d 500, 501. In that case the conveying clause was "to the said David Guy his natural life and heirs forever." The Court held in this case that the statute abolishing the rule in *Shelley's* case was applicable because the estate was expressly limited to the grantee Guy for his life and that the rule doing away with estates tail under Sec. 64–102 was not the applicable rule. *Ibid.* at 610–11, 293 S.W.2d at 177.

This case positively affirms *Williams v. Williams, supra,* and the cases hereinabove cited growing out of that case. The Court stated that "[i]t is impossible for us to make any distinction or legal difference between a conveyance '*to Ralph Parker for life and at his death to his bodily heirs*' and a conveyance 'to Ralph Parker and at his death to his bodily heirs.'" Nor can we draw any distinction between either phraseology and a devise to Nellie Gupton Harris "during her natural life, and . . . her bodily heirs, if any, forever . . .". Indeed, if anything this latter devise is stronger in intent and implication.

*Butler* was quoted, with obvious approval in *Fehringer v. Fehringer,* 222 Tenn. 585, 439 S.W.2d 258 (1969).

We think this is a classic case for the application of § 64–103, T.C.A.

## VI.

Various competing rules of construction are urged upon the Court.

■ The appellant earnestly insists upon the application of the rule that courts will refuse to cut down an estate granted in fee or absolutely, by subsequent provisions of the will conveying a lesser estate or interest, absent language which is "clear, unmistakable and certain." *Meacham v. Graham, supra.* We agree that this is a recognized rule of construction; however, we find it to be inapplicable in the case at bar.

First, there is no clear language manifesting an intent to convey an absolute estate. Secondly, the only interest positively identified and designated in the will is a life estate. There is no ambiguity.

■ We have come a long way in ridding the law of wills of some of its harsh and unyielding rules of construction since this Court decided *Polk v. Faris,* 17 Tenn. 209 (1836). In that case the Court declared:

[I]t matters not how strongly or how clearly the grantor may intend that the instrument should not be controlled by the rule of law, yet, if the proper construction of the terms which he has used in the entire instrument bring it within the operation of the rule of law, the rule of law, and not his intention, must have effect. 17 Tenn. at 236.

When *Polk v. Faris* was decided, a harsh and technical rule of the common law was in the early stages of revision and viewed in the context of the times it is not difficult to see how courts could conclude that rigid application of corrective legislation was imperative. Today, we labor under no such compulsion. We regard the intention of the testator, to be gleaned from the entire instrument and the attendant circumstances, to be the overriding consideration and once that intention has been determined, it would be contrary to public policy and a rejection of reason for courts to frustrate the donor in his declared purpose. Thus, the one great Commandment in the construction of wills is the intention of the testator.

The primacy of the rule of the intention of the testator was first announced in *Hoggatt v. Clopton,* 142 Tenn. 184, 192, 217 S.W. 657, 659 (1919), in these words:

The cardinal rule in the construction of all wills is that the court should seek to discover the intention of the testator. To this rule all other rules of construction must necessarily yield.

It was last enunciated by this Court in *Martin v. Taylor,* 521 S.W.2d 581, 584 (1975):

Auxiliary and subsidiary rules of construction have been created as convenient aids to determine the intent of the testator, but being subordinate to the cardinal rule, or *the rule of intent,* they must necessarily contain the saving clause, "unless a contrary intention appear from the will." (Emphasis supplied).

We hold that the testator intended definite failure of issue, i. e. at the death of the life tenant.

The estate tail at the common law rested upon the theory that a limitation over to another in fee upon the death of the first taker without issue, referred to an indefinite failure of issue, i. e. failure at any time. If the testator intended a definite failure of issue, then a gift over arises by purchase as opposed to limitation and no estate tail is created. See Vol. I, American Law of Property (1952), Sec. 2.14, p. 120. Again § 64–102, T.C.A. does not come into play to create an estate tail.

■ Where it is clear, as we think it is here, that the testator intended the words used to be words of purchase, a fee tail estate does not arise. *Collis v. Citizens Fidelity Bank & Trust Co.,* 314 Ky. 15, 234 S.W.2d 164 (1950).

## VII.

■ We hold that under the will of her mother, Nellie Alberta Gupton Harris took a life estate, with alternative contingent remainder as follows:

First, to Nellie's issue, if any. This interest would ripen into a present possessory interest in fee upon the culmination of the prior particular estate, by the death of Nellie.

Secondly, should Nellie die without issue and her husband, James V. Harris, survive her, the property vests in Jawana Sue Gupton in fee simple.

If Nellie should die without issue and *not* survived by her husband, James V. Harris, it will revert to the estate of Angie Heflin Gupton for failure of the second of two conditions precedent.

The decree of the Chancellor is modified accordingly and

Affirmed.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.